**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| BRANDON MCWASHINGTON, | |
| Plaintiff | |
| v. | Case No. 4:24-cv-02153 |
| JOSEPH P. RODGERS II, BRIAN G. CURTIS, NOE GARZA, MELISSA A. HINOJOSA, KHALID H. KHALID,  JOSUE D. RUIZ, MANUEL A. SALAZAR, WARNER A. SOLIS, and RODOLFO A. TREVINO JR. | **JURY DEMAND** |
| Defendants. | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS (DOC. 10)
AND INCORPORATED MEMORANDUM OF LAW**

## TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................i

TABLE OF AUTHORITIES........................................................................iii

INTRODUCTION......................................................................................1

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING......................1

FACTUAL BACKGROUND.........................................................................1

STATEMENT OF THE ISSUES TO BE RULED UPON.......................................3

SUMMARY OF THE ARGUMENT.................................................................4

ARGUMENT...........................................................................................5

I. Mr. McWashington Plausibly Alleged that Defendants Violated His Right to Be Free of Unconstitutionally Excessive Force.................................................................5

   A. Defendants Subjected Mr. McWashington to Unconstitutionally Excessive Force When They Trained Their Lethal Duty Weapons on Him. ........................................6

   B. Bystander Liability Attaches to Defendants' Failure to Intervene or Protect Mr. McWashington From an Unjustifiable K9 Attack.................................................9

   C. Defendants Challenge a Phantom Fourteenth Amendment Due Process Claim That Mr. McWashington Did Not Bring. ..........................................................12

II. Qualified Immunity Does Not Shield Defendants from Liability. ...................................12

   A. Defendants Violated Clearly Established Law By Training Their Lethal Weapons At Mr. McWashington....................................................................................13

   B. Bystander Defendants Violated Clearly Established Law By Failing to Intervene and Prevent an Unconstitutional and Excessive Police Dog Bite. .....................................14

     1. It is Well-Settled That Siccing a K9 on a Compliant and Non-Threatening Arrestee is Objectively Unreasonable. ...........................................................................14

i

2. It Is Clearly Established That Defendants Had An Obligation to Intervene in the Unconstitutionally Excessive K9 Attack...............................................................16

**III. Mr. McWashington Timely Brought This Case Within the Statute of Limitations......18**

**IV. The Texas Tort Claims Act Does Not Apply Because Mr. McWashington Did Not Bring Any Common Law State Tort Claims..............................................................20**

**V. The Court May Not Consider Extraneous and Irrelevant Evidence at This Stage.........20**

**A. The Court May Not Consider the Body-Worn Camera Footage Because it is Not Referenced in the Amended Complaint. .....................................................20**

**B. The Court Should Not Take Judicial Notice of Facts That Are Irrelevant to Mr. McWashington's Claims and Defendants' Motion. .................................21**

**CONCLUSION..................................................................................22**

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Manis v. Cohen,*
  No. 3:00CV1955-P, 2001 WL 1524434 (N.D. Tex. Nov. 28, 2001)............................7, 13, 14

*United States v. Campbell,*
  178 F.3d 345 (5th Cir. 1993)................................................................................................8

*United States v. Hensley,*
  469 U.S. 221 (1985) .............................................................................................................8

*Checki v. Webb,*
  785 F.2d 534 (5th Cir. 1986)................................................................................................7

  994 F.2d 200 (5th Cir. 1993)................................................................................................8

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .............................................................................................................3

*Backe v. LeBlanc,*
  691 F.3d 645 (5th Cir. 2012)................................................................................................4

*Bailey v. Ramos,*
  657 F. Supp. 3d 927 (W.D. Tex. 2023) ..............................................................................12

*Baxter v. Harris,*
  2016 WL 11517046 (6th Cir. Aug. 30, 2016) ...................................................................17

*Beanal v. Freeport-McMoran, Inc.,*
  197 F.3d 161 (5th Cir. 1999)..............................................................................................10

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) .............................................................................................................3

*Braxton v. Renteria,*
  2017 WL 8677938 (N.D. Tex. Nov. 15, 2017)...................................................................11

*Bush v. Strain,*
  513 F.3d 492 (5th Cir. 2008)..............................................................................................15

*Cooper v. Brown,*
  844 F.3d 517 (5th Cir. 2016)......................................................................................Passim

*Easter v. Powell,*
  467 F.3d 459 (5th Cir. 2006)................................................................................................3

*Edwards v. Shanley,*
  666 F.3d 1289 (11th Cir. 2012) ....................................................................................16, 17

*Fidler v. City of Indianapolis,*
  428 F. Supp. 2d 857 (S.D. Ind. 2006) ................................................................................17

*Flores v. City of Palacios,*
  381 F.3d 391 (5th Cir. 2004)................................................................................................5

*Flores v. Rivas*, EP-18-CV-,
  2020 WL 563799 (W.D. Tex. Jan. 31, 2020) .............................................................7, 13, 14
*Garza v. Guerra*, No. CIV. A.,
  2009 WL 136022 (S.D. Tex. Jan. 20, 2009)...................................................................4, 20
*Gonzales v. Wyatt*,
  157 F.3d 1016 ........................................................................................................................19
*Goodale v. Seguin*,
  2022 WL 17084400 (W.D. Tex. Nov. 17, 2022) ................................................................21
*Graham v. Connor*,
  490 U.S. 386 (1989) ..........................................................................................................5, 7
*Great Plains Trust Co. v. Morgan Stanley Dean Witter*,
  313 F.3d 305 (5th Cir. 2002) ................................................................................................3
*Hale v. Townley*,
  45 F.3d 914 (5th Cir. 1995)................................................................................................10
*Hodge v. Engleman*,
  90 F.4th 840 (5th Cir. 2024) .............................................................................................4, 20
*In re KeyEnergy Servs., Inc. Sec. Litig.*,
  166 F. Supp. 3d 822 (S.D. Tex. 2016) .........................................................................4, 20, 22
*In re Royal Alice Properties, LLC*,
  619 B.R. 839 (Bankr. E.D. La. 2020) ................................................................................22
*Jackson v. Duke*,
  259 F.2d 3 (5th Cir. 1958) ..................................................................................................19
*Joseph v. Bartlett*,
  981 F.3d 319 (5th Cir. 2020)..............................................................................................21
*Landry v. Cypress Fairbanks ISD*,
  2018 WL 3436971 (S.D. Tex. Jul. 17, 2018) .......................................................................3
*Lewis v. Huckabee*,
  2004 WL 2451904 (N.D. Tex. Nov. 1, 2004)....................................................................19
*Manis v. Lawson*,
  585 F.3d 839 (5th Cir. 2009)..............................................................................................13
*Drumm v. Valdez*,
  3:16-CV-3482-M-BH, 2019 WL 7494443 (N.D. Tex. Dec. 3, 2019) .................................11
*McDonald v. Chicago*,
  561 U.S. 742 (2010) ............................................................................................................12
*Paternostro v. Crescent City Connection Police*,
  2002 WL 34476319 (E.D. La. Apr. 2, 2002).....................................................................11
*Petrobras Am., Inc. v. Samsung Heavy Indus. Co., Ltd.*,
  9 F.4th 247 (5th Cir. 2021) ................................................................................................19

*Polnac v. City of Sulphur Springs*,
  555 F. Supp. 3d 309 (E.D. Tex. 2021) ............................................................21
*Price v. City of San Antonio*,
  431 F.3d 890 (5th Cir. 2005) .........................................................................18
*Taylor v. Riojas*,
  592 U.S. 7 (2020) .....................................................................................3, 16
*Texas State Univ. v. Tanner*,
  689 S.W.3d 292 (Tex. 2024) ..........................................................................19
*Thomas v. Johnson*,
  2023 WL 5254689 (S.D. Tex. 2023) ..........................................................15, 17
*Timpa v. Dillard*,
  20 F.4th 1020 (5th Cir. 2021) ...............................................................9, 10, 15

**Statutes**

42 U.S.C. § 1983 ..............................................................................................1, 20
Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) .................................................4, 18

**Rules**

Fed. R. Civ. P. 3 ....................................................................................................19
Fed. R. Evid. 201(c)(2) ..........................................................................................22
Fed. R. Civ. P 4(m) ...............................................................................................19

## INTRODUCTION

Plaintiff Brandon McWashington brought suit under the Ku Klux Klan Act, 42 U.S.C. § 1983, after a group of Houston Police Department (HPD) officers sicced an out-of-control police dog ("K9") on him during a routine traffic stop, while he sat stationary and unarmed in his car, causing him permanent nerve damage and psychological harm. His Amended Complaint (Doc. 4) pleads in great detail the role each of the nine HPD Defendants played in violating Mr. McWashington's right to be free of excessive force. Still, Defendants have moved to dismiss, ignoring clearly established law that prohibits the precise type of gratuitous force they inflicted on Mr. McWashington. Doc. 10. They also claim the statute of limitations bars Mr. McWashington's timely filed lawsuit and argue that a Texas law governing state torts somehow bars his federal constitutional claims. The Court should deny Defendants' meritless motion.

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

This civil rights case alleges that HPD Officers Rodgers II, Curtis, Garza, Hinojosa, Khalid, Ruiz, Salazar, Solis, and Trevino Jr. used unconstitutionally excessive force by pointing their lethal weapons at Mr. McWashington without provocation and by inflicting or failing to intervene to prevent a gratuitous dog bite by an HPD K9 during a traffic stop on June 7, 2022. Mr. McWashington seeks declaratory and monetary relief. Defendants Curtis, Garza, Hinojosa, Khalid, Ruiz, Salazar, Solis and Trevino Jr. (Defendants) have moved to dismiss. Defendant Rodgers, who released the K9 on Mr. McWashington, is not party to the motion.

## FACTUAL BACKGROUND

On June 7, 2022, Defendant Solis initiated a traffic stop on Mr. McWashington for rolling past a stop sign. Doc. 4 (Am. Compl.) ¶ 16. Mr. McWashington continued driving a short distance at a low speed and pulled over within three minutes. *Id.* ¶ 19. Then, Mr. McWashington, who was

1

unarmed and non-combative, stayed in his vehicle. *Id.* ¶ 20. Rather than approach the vehicle to issue a ticket or assess Mr. McWashington's sobriety, as is typical in a traffic stop, Defendant Solis immediately unholstered his lethal duty weapon and pointed it at Mr. McWashington's driver-side door. *Id.* ¶¶ 21–26. Defendants Curtis, Garza, Hinojosa, Khalid, Salazar, and Trevino arrived within minutes, also unholstering their guns and aiming them at Mr. McWashington. *Id.* ¶¶ 30, 35. Defendants shouted conflicting commands regarding whether Mr. McWashington should exit his vehicle or stay inside and kept their lethal weapons—including an AR-15—trained on Mr. McWashington even after they had a clear view of his body and could see that he was unarmed and did not pose a threat to officer safety. *See e.g.*, *id.* ¶¶ 26, 35–40, 43–45, 77–78, 103.

Defendants could tell that Mr. McWashington was impaired and was struggling to comply with their commands. *Id.* ¶¶ 47–50. Still, Mr. McWashington did eventually exit the car and lay on his back on the ground with his hands open, visibly unarmed, but he had a hard time "crawling" toward Defendants, as they instructed, so he eventually re-entered the car. *Id.* ¶¶ 52–57. Despite Mr. McWashington's apparent incapacitation, Defendants escalated a simple traffic stop by calling a K9 Unit. *Id.* ¶ 63. Defendant Rodgers arrived and sicced K9 Rico onto Mr. McWashington. *Id.* ¶¶ 62–65, 77–90. The K9 was so aggressive that it attacked one of the officers before attacking Mr. McWashington and required multiple commands before it released Mr. McWashington's arm from its clenched jaw, not letting go until it had exposed Mr. McWashington's muscles and tendons. *See id.* ¶¶ 79–81, 91, 110. Considering Defendants could see Mr. McWashington was unarmed, they had numerous alternative, non-lethal avenues of engaging him. *See id.* ¶¶ 66, 70, 76. Yet they chose gratuitous violence and caused irreparable damage to Mr. McWashington's left arm. *Id.* ¶¶ 110–16. Defendants then joked about the dog bite and Mr. McWashington's incapacitation. *Id.* ¶¶ 99–104. Defendant Rodgers defended the K9's behavior, reasoning that the

dog was trained but that "it was well known that HPD K9s bite without command and are *unpredictable weapons*." *Id.* ¶ 106 (emphasis added). Defendants knew that they were unleashing unreasonable and excessive force on an incapacitated and unarmed civilian and they failed to intervene before it was too late.

## STATEMENT OF THE ISSUES TO BE RULED UPON

1.        **Do the detailed factual allegations in the Amended Complaint satisfy Mr. McWashington's pleading burden?** When ruling on a motion to dismiss for failure to state a claim, a court must take all well-pleaded factual allegations as true and construe those facts in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). A complaint need only allege enough facts "to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning the facts must simply "'allow[] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged,'" *Landry v. Cypress Fairbanks ISD*, No. 4:17-CV-3004, 2018 WL 3436971, at *3 (S.D. Tex. Jul. 17, 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

2.        **Does qualified immunity shield Defendants from liability, considering the constitutional violations Mr. McWashington alleges have long been clearly established?** A qualified immunity analysis requires a court to consider: "(1) whether the plaintiff has alleged a violation of an actual constitutional right; and (2) if so, whether the right was clearly established at the time of the violation." *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016). "The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Easter v. Powell*, 467 F.3d 459, 465 (5th Cir. 2006); *see also Taylor v. Riojas*, 592 U.S. 7 (2020) (reversing grant of qualified immunity even absent

3

factually similar precedent). At the motion to dismiss stage, the court must simply decide whether "the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (citation omitted).

**3.      Is Mr. McWashington's complaint, filed the day before the expiration of the two-year statute of limitations under Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a), timely?**

**4.      Does the Texas Tort Claims Act (TTCA), which governs state law claims, bar Mr. McWashington's federal constitutional claims?** *See Garza v. Guerra*, No. CIV. A. B-08-084, 2009 WL 136022, at *9 (S.D. Tex. Jan. 20, 2009) (J. Hanen).

**5.      Can the Court consider the evidence Defendants submitted with their motion, which is not incorporated in the Amended Complaint or relevant to the disputed issues?** *Hodge v. Engleman*, 90 F.4th 840, 844 (5th Cir. 2024); *In re KeyEnergy Servs., Inc. Sec. Litig.*, 166 F. Supp. 3d 822, 872 (S.D. Tex. 2016).

## SUMMARY OF THE ARGUMENT

*Mr. McWashington Plausibly Alleged Claims for Relief.* Mr. McWashington's detailed account of the June 7, 2022 traffic stop plausibly gives rise to Fourth Amendment violations. Mr. McWashington was unarmed, incapacitated, and exhibited no threat to the officers. It was objectively unreasonable for Defendants to train their lethal weapons on Mr. McWashington for a prolonged period without justification, and for them to allow Defendant Rodgers to deploy an attack dog on a defenseless Mr. McWashington.

*Qualified Immunity Does Not Apply.* The law establishing that Defendants violated Mr. McWashington's Fourth Amendment rights was clearly established long before June 7, 2022.

*Mr. McWashington Timely Filed This Case.* Mr. McWashington brought this case within the two-year limitations period.

*The TTCA Does Not Apply.* The TTCA, which governs state law torts, does not apply to Mr. McWashington's case, which raises exclusively federal constitutional claims.

*The Court May Not Consider Evidence Defendants Submitted With Their Motion.* The Court cannot consider the body-worn camera footage because is not referenced in the complaint. Mr. McWashington's criminal convictions, which Defendants did not know about when they stopped him, are irrelevant to the reasonableness of Defendants' decision to train their lethal weapons on him or allow the K9 to maul him, so the Court may not take judicial notice of them.

## ARGUMENT

### I.  Mr. McWashington Plausibly Alleged that Defendants Violated His Right to Be Free of Unconstitutionally Excessive Force.

To make out a claim of excessive force in violation of the Fourth Amendment, a plaintiff must show: (1) he suffered an injury; (2) the injury was caused directly and only by a use of force that was clearly excessive; and (3) the excessiveness of the force was clearly unreasonable. *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004). Of course, a court must give "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The detailed allegations in the Amended Complaint demonstrate that, under the circumstances of the traffic stop, Defendants caused Mr. McWashington constitutional injury by training their lethal weapons on him and by failing to intervene before or during an unjustified and unprovoked dog bite.

5

**A. Defendants Subjected Mr. McWashington to Unconstitutionally Excessive Force When They Trained Their Lethal Duty Weapons on Him.**

In Counts II and IV, Mr. McWashington alleges that Defendants violated his Fourth Amendment rights "by quickly unholstering [their] lethal duty weapon[s] on Mr. McWashington during a traffic stop with no reasonable basis to believe this level of force was warranted." Am. Compl. ¶¶ 134, 150. In both claims, Mr. McWashington pleads detailed facts giving rise to plausible claims of unconstitutionally excessive force.

Count II focuses on Defendant Solis's conduct toward Mr. McWashington when he "pulled Mr. McWashington over for slow rolling through stop signs, a nonviolent traffic offense." *Id*. ¶ 135. Mr. McWashington did not make any "threats toward the officers," any "attempt to flee from his car," or "actively resist Defendant Solis." *Id*. ¶ 137. Instead of approaching Mr. McWashington's car to speak with him, "Defendant Solis resorted to brandishing his lethal duty weapon and training it at Mr. McWashington," even though Mr. McWashington "posed no threat or flight risk." *Id*. ¶¶ 136, 139. Mr. McWashington contends that "Defendant Solis's actions were objectively unreasonable in light of the circumstances he confronted." *Id*. ¶ 140. Count IV focuses on the subsequent actions of Defendants Curtis, Hinojosa, Khalid, Ruiz, Salazar, and Trevino, who were aware that Mr. McWashington had been stopped for a nonviolent traffic offense, yet immediately "escalated the encounter" by drawing their lethal weapons instead of "continuing verbal negotiations." *Id*. ¶ 151, 155.

Under these circumstances, each of the *Graham* factors weighs in Mr. McWashington's favor—demonstrating that there was no basis for Defendants to use force to apprehend him or to keep their guns drawn after it became clear Mr. McWashington was unarmed and incapacitated. First, Mr. McWashington was suspected of a non-violent traffic offense. Am. Compl. ¶¶ 135, 151;

*see Graham*, 490 U.S. at 396. Second, Mr. McWashington did not make any "threats toward the officers," Am. Compl. ¶¶ 31, 137, 151, such that he did not "pose an immediate threat to the safety of the officers or others," *Graham*, 490 U.S. at 396. Finally, Mr. McWashington was not "actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Indeed, "for at least fifteen minutes" before Defendants resorted to the use of excessive force, Mr. McWashington did not "attempt to flee from his car," or "actively resist" Defendants. *Id.* ¶¶ 31, 137, 151.

Additionally, circuit precedent demonstrates that Defendants were not justified in drawing their lethal weapons. *Checki v. Webb* explains that a "police officer who terrorizes a civilian by brandishing a cocked gun in front of that civilian's face . . . has certainly laid the building blocks for a section 1983 claim against him." 785 F.2d 534, 538 (5th Cir. 1986). As such, it is "objectively unreasonable for a police officer to forcefully brandish a deadly weapon at citizens whom he could not reasonably have perceived to be dangerous." *Flores v. Rivas*, EP-18-CV-297-KC, 2020 WL 563799, at *7 (W.D. Tex. Jan. 31, 2020); *see also Manis v. Cohen*, CIV.A.3:00CV1955-P, 2001 WL 1524434, at *8 (N.D. Tex. Nov. 28, 2001) (plaintiff sufficiently satisfied "injury" prong of excessive force, based on his allegation that a defendant officer "point[ed] his gun at [p]laintiff's head, just a few inches from his face while holding the trigger with his index finger"). Even if Defendants initially had safety concerns, they should have dropped their weapons once it became apparent that Mr. McWashington posed no threat. *See, e.g.*, *Cooper*, 844 F.3d at 524 ("[O]nce an arrestee stops resisting, the degree of force an officer can employ is reduced.").

Despite this, Defendants contend that they did not violate Mr. McWashington's Fourth Amendment rights by unholstering and pointing their duty weapons at him. Doc. 10 at 14. In support of this argument, they cite a bevy of case law for the general proposition that police officers are allowed to deploy some force in the course of making an arrest. *See id.* at 14–15. True,

7

generally speaking. But Defendants do not articulate why, as a matter of law, the use of force Mr. McWashington describes in Counts II and IV does not constitute constitutionally excessive force. *See generally id*. In fact, the cases they cite negate this notion.

Defendants' cases all involve individuals suspected of armed offenses. *United States v. Campbell* considered whether it was reasonable for the officers to conduct a *Terry* stop by drawing guns and using handcuffs on the suspect. 178 F.3d 345, 349–50 (5th Cir. 1993). Importantly, the court found the officer's conduct reasonable because "there were good reasons to assume that Campbell was armed," as he was suspected of committing an armed robbery. *Id.* at 349. *United States v. Hensley* did not specifically consider the reasonableness of the officer conducting a traffic stop with his revolver drawn but, similarly, the suspects in that case were accused of armed robbery. 469 U.S. 221, 223–24 (1985). *United States v. Sanders* also involved a suspected gunman, who was apprehended minutes after a report was made that someone matching his description had a gun at the premises where the officers found him. 994 F.2d 200, 201–02 (5th Cir. 1993). Though the Fifth Circuit concluded that it was not unreasonable for an officer to point a weapon at the suspect under those circumstances, it emphasized that "this holding is not to be interpreted as meaning that the police are automatically authorized to employ these procedures in every investigatory detention," but rather that "the relevant inquiry is always one of reasonableness under the circumstances." *Id.* at 206.

The circumstances here stand in sharp contrast: Mr. McWashington was stopped for a non-violent traffic offense and he was "visibly unarmed." Am. Compl. ¶¶ 135, 137, 151–52. This is a dispositive distinction, and *Campbell*, *Hensley*, and *Sanders* do not control. Rather, as *Flores* and *Manis* demonstrate, it was an unreasonable and unconstitutional use of excessive force for Defendants to brandish their weapons on an unarmed and incapacitated Mr. McWashington.

8

**B. Bystander Liability Attaches to Defendants' Failure to Intervene or Protect Mr. McWashington From an Unjustifiable K9 Attack.**

In Count III, Mr. McWashington contends that Defendants Garza, Hinojosa, Khalid, Ruiz, Salazar, Solis and Trevino (Bystander Defendants) violated his Fourth Amendment rights by failing to intervene or protect him from the unjustifiable K9 attack. Am. Compl. ¶¶ 141–48. To state a claim for failure to intervene, a plaintiff must allege that the bystander officer: (1) was aware of the constitutional violation; (2) was present at the scene of the violation; and (3) had a reasonable opportunity to prevent the harm; but (4) chose not to act. *Timpa v. Dillard*, 20 F.4th 1020, 1038–39 (5th Cir. 2021). Mr. McWashington satisfies these elements.

The predicate constitutional violation was Defendant Rodgers's use of K9 Rico to maul Mr. McWashington. Defendant Rodgers unleashed the K9 on Mr. McWashington even though he was "intoxicated" and "acting . . . real sluggish, real slow" but "did nothing to suggest he was a threat, let alone an imminent threat, to the officers surrounding him" and complied to the extent he could with the conflicting commands Defendants were barking at him, given his inebriated state. Am. Compl. ¶¶ 64, 68, 70–72; *see also id.* ¶¶ 46–59. It is "objectively unreasonable" for a dog to "bit[e] a compliant and non-threatening arrestee." *Cooper*, 844 F.3d at 524. And contrary to Defendants' suggestion, Doc. 10 at 18, Mr. McWashington plausibly alleges that Bystander Defendants failed to protect him from Defendant Rogers' unconstitutional use of force (via K9 Rico's mauling) "despite being physically present, aware of Defendant Rodgers' constitutional violations, and having ample opportunity to intervene" by merely standing by and watching "while Defendant Rodgers' unnecessarily escalated the scene and prolonged the attack*." Id.* ¶¶ 147–48. Bystander Defendants were present at the scene of the dog attack "at least 15 minutes" beforehand, and they "had approximately 13 minutes' notice that a police dog was arriving, but refused to take

reasonable measures to intervene before or during Mr. McWashington's mauling by the police dog." Am. Compl. ¶ 143–44. In addition, Bystander Defendants Solis and Hinojosa "failed to intervene as the dog mutilated [Mr. McWashington's] arm for 30 seconds," even after commenting that Mr. McWashington was not resisting. *Id.* ¶ 144. Collectively, these facts plausibly demonstrate that Bystander Defendants chose not to intervene, despite their knowledge of a constitutional violation and the opportunity to stop it—before and during its occurrence, and thus "acquiesced in that violation." *See* Doc. 10 at 17.

Defendants argue that Mr. McWashington "pled no actual facts to suggest that Defendants [] had the authority or realistic ability to prevent the K9 from biting [Mr.] McWashington," or to stop the use of force once it began. Doc. 10 at 18. This argument is wrongheaded, because bystander liability kicks in when a "fellow officer" is violating an individual's constitutional rights–regardless of rank. *Timpa*, 20 F.4th at 1038; *see, e.g.*, *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995) (applying bystander liability to officers from different agencies). And though Bystander Defendants may not been able to physically intervene during the mauling, they could have told their fellow officers that the use of a K9 was unconstitutionally excessive before the dog bite started or told Defendant Rodgers to order K9 Rico to stop while it happened. Defendants' argument also ignores the clear and specific allegations in the Amended Complaint regarding Defendants' opportunity to intervene, instead raising fact-intensive questions inappropriate for resolution on a motion to dismiss. *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999) (dismissal is not proper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").

Plus, the cases Defendants rely on to support their argument are consistent with Mr. McWashington's theory: they show that bystander liability can attach so long as a defendant

officer is physically present but fails to act during the pendency of a constitutional violation. In *Drumm v. Valdez*, the court rejected a bystander liability theory where the plaintiff did not allege that the bystander defendant "was present the entire time that [the defendant officers] restrained him or carried him to his cell" or that the bystander defendant "was physically present when [the plaintiff] was assaulted by the other defendants at his cell and at the infirmary." 3:16-CV-3482-M-BH, 2019 WL 7494443, at *7 (N.D. Tex. Dec. 3, 2019), *report and recommendation adopted*, 3:16-CV-3482-M-BH, 2020 WL 85163 (N.D. Tex. Jan. 6, 2020). Due to the absence of allegations that the bystander officer was physical present during the assault, the court concluded that the plaintiff had not pleaded enough facts to show the officer "realistically had the opportunity to prevent the initial use of force" or that he "had sufficient time to intervene during the first alleged assault." *Id.*; *see also Paternostro v. Crescent City Connection Police*, No. CIV. A. 00-2740, 2002 WL 34476319, at *11 (E.D. La. Apr. 2, 2002) (finding that bystander liability claim failed because officer was not in a location providing a realistic opportunity to prevent the violations of another officer). Mr. McWashington was not required to plead with any more specificity what Bystander Defendants could or should have done to stop the dog attack.

*Braxton* also supports Mr. McWashington's claim. As Defendants note, Doc. 10 at 18, it clarifies that bystander liability requires that an officer "must have a reasonable opportunity to realize the excessive nature of the force and a realistic opportunity to stop it. *Braxton v. Renteria*, No. 5:17-CV-125-BQ ECF, 2017 WL 8677938, at *5 (N.D. Tex. Nov. 15, 2017), *report and recommendation adopted*, No. 5:17-CV-125-C, 2018 WL 1535911 (N.D. Tex. Mar. 29, 2018) (citation omitted). Again, Mr. McWashington alleged in detail circumstances giving rise to the reasonable conclusion that the use of a police dog was not necessary, such that Bystander

Defendants should have known they had a duty to intervene, and that they had ample time to do so before the K9 unit arrived. Am. Compl. ¶¶ 142–46.

### C. Defendants Challenge a Phantom Fourteenth Amendment Due Process Claim That Mr. McWashington Did Not Bring.

Defendants confusingly argue that Mr. McWashington cannot bring a Fourteenth Amendment due process claim, because a use-of-force challenge must be brought under the Fourth Amendment. Doc. 10 at 12–13. True. Accordingly, he did not bring a due process claim.

Rather, Mr. McWashington seeks to vindicate his Fourth Amendment rights, "as incorporated to the states through the Fourteenth Amendment." Am. Compl. ¶¶ 124, 134, 150. The Fourteenth Amendment is simply the procedural vehicle by which a plaintiff can sue state officers for violating federal constitutional rights. *See McDonald v. Chicago*, 561 U.S. 742, 763 (2010) (recognizing that "the [Fourteenth Amendment] Due Process Clause fully incorporates particular rights contained in the first eight Amendments."). "[T]hese references [in the Amended Complaint] are merely intended to reflect the incorporation of those constitutional rights against the states." *Bailey v. Ramos*, 657 F. Supp. 3d 927, 941 (W.D. Tex. 2023). Because Mr. McWashington did not bring a due process claim, there is no such claim to dismiss.

### II. Qualified Immunity Does Not Shield Defendants from Liability.

As a failsafe for their 12(b)(6) argument, Defendants argue that qualified immunity shields them from liability. Doc. 10 at 21. The qualified immunity section of Defendants' motion to dismiss is a five-paragraph long recitation of law without any factual application. *See id.* at 20–23. Nonetheless, Mr. McWashington will address qualified immunity head-on. As explained in Section I above, Mr. McWashington adequately stated claims for relief regarding the conduct challenged in Counts I, III, and IV, satisfying the first element of qualified immunity analysis.

*Cooper*, 844 F.3d at 522. As for the second prong, a "right is clearly established if, in light of preexisting law, the unlawfulness of an action would be apparent to a reasonable officer." *Manis v. Lawson*, 585 F.3d 839, 846 (5th Cir. 2009). Mr. McWashington's right to be free from the excessive force at the heart of Counts II, III, and IV was clearly established on June 7, 2022. Qualified immunity does not shield Defendants here.

### A. Defendants Violated Clearly Established Law By Training Their Lethal Weapons At Mr. McWashington.

It was the law of this circuit long before Defendants trained their lethal weapons at Mr. McWashington that such conduct exceeds constitutional bounds when directed at an individual, like Mr. McWashington, who does not appear to be armed or dangerous.

In *Manis*, the court considered whether an officer violated the plaintiff's Fourth Amendment rights by "pointing his gun at Plaintiff's head, just a few inches from his face while holding the trigger with his index finger" when the plaintiff was not resisting police authority. 2001 WL 1524434 at *7. Though the court denied the plaintiff's summary judgment motion, it did so only because of a factual dispute, reasoning that the claim "likely will turn on whether [the defendant officer] did in fact point his gun" at the plaintiff's face. *Id.* at *8. This case, decided over 20 years before the incident underlying this case, demonstrates that no reasonable officer could have believed it was okay to train a gun at an unarmed and incapacitated Mr. McWashington, who was at most passively resisting.

If *Manis* were not enough, *Flores* is directly on point. The *Flores* court found that the plaintiffs had stated a plausible claim of unconstitutionally excessive force by alleging that an officer had "forcefully brandish[ed] a deadly weapon at citizens whom he could not reasonably have perceived to be dangerous." 2020 WL 563799 at *7. The court went on to reject the officer's

bid for qualified immunity, concluding that it was "clearly established in the Fifth Circuit that even the use of relatively minor force, such as pushing, kneeing, and sleeping, is excessive when deployed against a suspect who is neither fleeing nor resisting arrest." *Id.* at *7 (cleaned up). Because the plaintiffs "were neither fleeing, resisting arrest, nor posing any threat to [the defendant officer] or anyone else when he pointed his firearm at them," the court concluded that "Fifth Circuit precedent was sufficiently clear to put [the officer] on notice that it was objectively unreasonable for him . . . to brandish a deadly weapon." *Id*. If it was "sufficiently clear" at the time of the July 2018 incident underlying *Flores*, *id*. at *1, it was undeniably clear four years later, on June 7, 2022, when Defendants engaged in the same unconstitutional conduct.

It is also "clearly established that an officers' use of force may be excessive even when it results in purely psychological harm." *Flores*, 2020 WL 563799, at *7; *accord Manis*, 2001 WL 1524434 at *8. In other words, it does not matter that Defendants did not inflict physical harm when they fixed their weapons on an unarmed and defenseless Mr. McWashington—it suffices that their conduct caused him ongoing emotional harm. *See* Am. Compl. ¶ 157.

### B. Bystander Defendants Violated Clearly Established Law By Failing to Intervene and Prevent an Unconstitutional and Excessive Police Dog Bite.

#### 1. *It is Well-Settled That Siccing a K9 on a Compliant and Non-Threatening Arrestee is Objectively Unreasonable.*

Long before Defendant Rodgers sicced K9 Rico on Mr. McWashington, the Fifth Circuit held it to be "clearly established" that "subjecting a compliant and non-threatening arrestee to a lengthy dog attack [is] objectively unreasonable" under the Fourth Amendment. *See Cooper*, 844 F.3d at 524–25. In *Cooper*, police pulled over Jacob Cooper on suspicion of a DUI. *Id*. at 521. After submitting to a breathalyzer, Mr. Cooper ran away and hid in a small fenced area between two houses. *Id*. The officer who pulled over Mr. Cooper called for backup. *Id*. Responding to this

call, an officer, who did not know whether Mr. Cooper was armed, pursued Mr. Cooper with his police dog. *Id*. The dog found Mr. Cooper in his hiding place and bit him on the leg. *Id*. Following the initial bite, the dog continued biting Mr. Cooper for another one to two minutes, during which Mr. Cooper made no attempt to flee or fight back. *Id*. The officer testified that he ordered Mr. Cooper to show his hands and submit to arrest, that he could see Mr. Cooper's hands, and that he could see Mr. Cooper had no weapon. *Id*. Only after handcuffing him did the officer order the dog to release its bite. *Id*.

The Fifth Circuit affirmed denial of summary judgment for the officer on qualified immunity grounds, holding that the officer's use of force was unreasonable and excessive and that this was clearly established. *Id*. at 524–25. The court weighed heavily the absence of any evidence that Mr. Cooper was violent and the fact that, although Mr. Cooper had fled after being pulled over, he was no longer actively resisting or attempting to flee at the time the officer released his dog. *Id*. at 522–23. The Fifth Circuit concluded: "Our caselaw makes certain that once an arrestee stops resisting, the degree of force an officer can employ is reduced." *Id*. at 524. The Court pointed to its prior holding in *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008), that "it was objectively unreasonable for an officer to slam an arrestee's face into a nearby vehicle when the arrestee 'was not resisting or attempting to flee.'" *Id*. at 524–25. *See also Timpa*, 20 F.4th at 1034–35 ("Within the Fifth Circuit, the law has long been clearly established that an officer's continued use of force on a restrained and subdued subject is objectively unreasonable." (citations omitted)); *Thomas v. Johnson*, 2023 WL 5254689, at *7 (S.D. Tex. 2023) (Rosenthal, J.) (regarding a Feb. 22, 2021 K9 attack, concluding that "many decisions from the Fifth Circuit . . . offered ample notice to the officers that it is unconstitutional to use physical force sufficient to severely injure a suspect when that suspect is compliant or has been at most passively resisting").

15

*Cooper* plainly established that the use of a K9 under the circumstances of this case is unreasonable. Like the plaintiff in *Cooper*, Mr. McWashington did not pose any threat to the safety of the officers or others, and he was unarmed. Am. Compl. ¶¶ 27–28, 31, 68–69, 142. And, as in *Cooper*, Mr. McWashington was not resisting or attempting to flee when Defendants allowed a dog to attack him. *Id.* ¶¶ 68–69. Rather, it was apparent that Mr. McWashington was incapacitated and debilitated. *See id.* ¶ 60.

2. *It Is Clearly Established That Defendants Had An Obligation to Intervene in the Unconstitutionally Excessive K9 Attack.*

Bystander Defendants argue that "Plaintiffs have not identified any clearly established law applying bystander liability on similar facts" such that, "as of June 7, 2022, any reasonable officer would have known that the Constitution required them to intervene." Doc. 10 at 16. But that is not the applicable test, and ample case law shows that Bystander Defendants are not entitled to qualified immunity for their role in K9 Rico's attack on Mr. McWashington.

To begin, Mr. McWashington does not have to identify a case that applies bystander liability in the context of an unconstitutional dog attack. Qualified immunity hinges on what a "reasonable officer" would know, and all officers are equally positioned to know whether conduct is unconstitutional and whether they have an obligation to intervene against such conduct. *See Edwards v. Shanley*, 666 F.3d 1289, 1298 (11th Cir. 2012) (holding that officer who failed to protect plaintiff from unconstitutionally excessive force was "no more entitled to" qualified immunity than officer who exerted the force himself). As such, the Fifth Circuit's decisions in *Timpa*, *Cooper*, *Bush* give fair warning—to the extent any precedential warning is even necessary on such egregious facts, *see Taylor*, 592 U.S. at 7—that not intervening to stop K9 Rico from mauling an incapacitated Mr. McWashington was unconstitutional.

16

Regardless, numerous courts have found bystanders liable when another officer sics an attack dog on a suspect without just cause. For example, in *Edwards*, the Eleventh Circuit reversed a grant of qualified immunity to an officer who "made no effort to intervene" when his fellow officer unleashed an attack dog on the subject of a traffic stop. 666 F.3d at 1298. The plaintiff alleged that, although he fled into a wooded area after being pulled over, by the time the officers approached him he was "lying on his stomach with his hands exposed." *Id*. at 1293. When the officers ordered him to show his hands, he "made no movement" "because his hands were already visible." *Id*. On these facts, the court found that the force used was not only excessive but also "gratuitous and sadistic" and that the bystander officer was "no more entitled to qualified immunity than [the dog's handler]." *Id*. at 1296.

Likewise, in *Fidler v. City of Indianapolis*, a court denied qualified immunity to both a dog handler and a bystander officer for subjecting the plaintiff to a dog attack after he had already put his hands up and surrendered. 428 F. Supp. 2d 857 (S.D. Ind. 2006). Most recently, Judge Rosenthal denied qualified immunity to two bystander officers who stood by while a K9 mauled an individual who had been "silently laying on the ground for several minutes"—not unlike Mr. McWashington, who had been sitting in his car. *See Thomas*, 2023 WL 5254689, at *6–9. *Accord Baxter v. Harris*, No. 15-6412, 2016 WL 11517046 (6th Cir. Aug. 30, 2016) (affirming denial of bystander defendant's motion to dismiss on similar grounds). Here, Bystander Defendants were steps away for the entirety of the dog attack—and for at least 13 minutes beforehand when they knew a K9 was en route without justification. Am. Compl. ¶¶ 144, 148. It would have taken them no more than an instant to tell Defendant Rodgers to call off the attack dog before or during the attack. Instead, they did nothing. Qualified immunity does not shield

17

Bystander Defendants where they failed to intervene and prevent the blatant violation of Mr. McWashington's constitutional rights.

**III.Mr. McWashington Timely Brought This Case Within the Statute of Limitations.**

Defendants raise a statute-of-limitations defense, even though Mr. McWashington timely filed this case the day before the limitations period ended. In support, Defendants rely on a procedural provision of the Texas code that does not apply to federal claims.

The statute of limitations for a § 1983 claim is determined by the forum state's limitations period for personal injury torts. *Wallace v. Kato*, 549, U.S. 384, 387 (2007). In Texas, that is two years from the date the cause of action accrues. Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a). An excessive force claim generally accrues on the date when the force is inflicted. *Price v. City of San Antonio*, 431 F.3d 890, 893–94 (5th Cir. 2005), *abrogated on other grounds by Bradley v. Sheriff's Dep't St. Landry Par.*, 958 F.3d 387, 391–92 (5th Cir. 2020). Here, Mr. McWashington brought suit on June 6, 2024, challenging the unconstitutionally excessive force Defendants subjected him to on June 7, 2022. *See* Doc. 1; *see also* Doc. 10 at 20 (conceding that "Plaintiff filed this lawsuit June 6, 2024"). In other words, Mr. McWashington filed this case within the limitations period, which decidedly resolves this dispute in his favor. *See Price*, 431 F.3d at 893 (5th Cir. 2005) (requiring a civil rights plaintiff to file a complaint "no later than the same calendar day two years following the accrual of the cause of action").

Grasping at straws, Defendants fault Mr. McWashington for not effectuating service of process on Defendants within the two-year limitations window. Doc. 10 at 20. Under Texas law, they reason, a "suit is not 'brought,' and the statute of limitations is not satisfied," until after both "filing the petition and achieving service of process." *Id.* (citation omitted). But the Fifth Circuit has made clear that this "diligence requirement" does not apply to § 1983 claims brought in federal

court (or any federal claim brought in federal court for that matter). *Lewis v. Huckabee*, No. 304-CV-907L, 2004 WL 2451904 (N.D. Tex. Nov. 1, 2004) (citing *Gonzales v. Wyatt*, 157 F.3d 1016, 1021, n. 1 (5th Cir. 1998)). This is because, in a § 1983 case, "while state law controls as to the time within which an action must be begun, the manner in which it is commenced and when it is deemed to have begun, being procedural and not substantive, is covered by the Federal Rules of Civil Procedure." *Jackson v. Duke*, 259 F.2d 3, 6 (5th Cir. 1958). Under these rules, a "civil action is commenced by filing a complaint with the court," Fed. R. Civ. P. 3, and a plaintiff has 90 days to serve the complaint on a defendant, Fed. R. Civ. P 4(m).

Even if the diligence requirement did apply, dismissal would be unwarranted. A Texas suit is not automatically barred for failure to effectuate service before the statute of limitations runs. *Tanner*, the case on which Defendants rely, clarifies that diligence in attempting service "prevents the running of limitations for as long as a plaintiff truly labors to achieve service of process." *Texas State Univ. v. Tanner*, 689 S.W.3d 292, 298 (Tex. 2024) (evaluating timeliness of service effectuated more than three years after the limitations had run). Whether a plaintiff is diligent in attempting service is a "necessarily fact-intensive inquiry." *Id.* at 299. At this pleadings stage, the Court may not reach the "fact-intensive inquiry" regarding Mr. McWashington's diligence in effectuating service because, on its face, the Complaint is timely filed. *See Petrobras Am., Inc. v. Samsung Heavy Indus. Co., Ltd.*, 9 F.4th 247, 256 (5th Cir. 2021) (at the pleading stage, a statute-of-limitations defense can only prevail if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). The Court should reject Defendants' statute-of-limitations defense.

**IV. The Texas Tort Claims Act Does Not Apply Because Mr. McWashington Did Not Bring Any Common Law State Tort Claims.**

Even though Mr. McWashington did not bring any state tort claims, Defendants move to dismiss under the Texas Tort Claims Act, arguing that "[i]f a plaintiff pleads facts which amount to an intentional tort, the claim generally is for an intentional tort and is barred by the TTCA." Doc. 10 at 23–24. But as this Court has recognized, constitutional claims under § 1983 are constitutional torts separate from common law tort claims. *Garza*, 2009 WL 136022, at *9.

Here, the Amended Complaint unequivocally invokes 42 U.S.C. § 1983, for violations of Mr. McWashington's federal constitutional rights. Am. Compl. ¶¶ 123–24, 133–34, 141, 149–50. Mr. McWashington does bring any state tort claims, only constitutional torts alleged within the confines of § 1983. The Court should reject Defendant's frivolous TTCA argument.

**V. The Court May Not Consider Extraneous and Irrelevant Evidence at This Stage.**

Defendants attached body-worn camera footage of the incident and Mr. McWashington's convictions to their motion. At the pleadings stage, a court may typically consider only "the complaint and its proper attachments" and "documents that the pleadings incorporate by reference," *Hodge*, 90 F.4th at 844, or "*relevant* materials subject to judicial notice," *In re KeyEnergy Servs., Inc. Sec. Litig.*, 166 F. Supp. 3d at 872 (emphasis added). Here, the Amended Complaint does not incorporate the video evidence by reference. And Mr. McWashington's convictions are not relevant to the disputed issues. The Court should disregard both.

**A. The Court May Not Consider the Body-Worn Camera Footage Because it is Not Referenced in the Amended Complaint.**

For body-worn camera footage to be incorporated by reference in a complaint, the plaintiff must "attach the video evidence to the pleadings" or explicitly "refer to the videos." *Hodge*, 90 F.4th at 844. Merely describing the incident in great detail does not satisfy this requirement. *See*

20

*Polnac v. City of Sulphur Springs*, 555 F. Supp. 3d 309, 325–26 (E.D. Tex. 2021) (finding that body camera footage was not incorporated into the complaint where the plaintiff "[did] not cite to the body camera footage" but rather "merely provide[d] various statements in quotation marks," even though it was possible "that the quotes did, in fact, come from the body camera footage").

The Amended Complaint does not reference any body-worn camera footage. *See generally* Am. Compl. And though some quotes from the traffic stop are scattered throughout, "it is equally likely that the quotes came from [Mr. McWashington's] own recollection." *Polnac*, 555 F. Supp. 3d at 325. "Thus, the footage is not a proper point of consideration at the Rule 12(b)(6) stage." *Id.* at 326; *see also Goodale v. Seguin*, No. SA-22-CV-00031-XR, 2022 WL 17084400, at *3 (W.D. Tex. Nov. 17, 2022) (noting that a court can rely on evidence at the 12(b)(6) stage where it is "*referenced in a plaintiff's complaint* and subsequently made available in a defendant's motion to dismiss" (emphasis added)). The Court should deny Defendants' request.

But even if the Court finds it appropriate to consider the footage at this stage, it is entirely consistent with Mr. McWashington's allegations, further substantiating why Defendants' motion to dismiss must be denied. *Cf. Joseph v. Bartlett*, 981 F.3d 319, 345 (5th Cir. 2020) (a court may reject the plaintiff's version of facts at the pleadings stage only if the video exhibits "blatantly contradict" his allegations).

## B. The Court Should Not Take Judicial Notice of Facts That Are Irrelevant to Mr. McWashington's Claims and Defendants' Motion.

Defendants ask the Court to take judicial notice of "Harris County District Clerk records for the criminal case referenced in, and central to, Plaintiff's complaint." Doc. 10 at 10; Doc. 10-2. Defendants additionally attach as exhibits Mr. McWashington's records from three cases that predate and have nothing to do with this lawsuit. Doc. 10-3–10-5. Though these documents are all

theoretically subject to judicial notice, *see* Fed. R. Evid. 201(c)(2), the Court should deny Defendants' request because the records are not relevant to the motion to dismiss proceedings. *See In re KeyEnergy Servs., Inc. Sec. Litig.*, 166 F. Supp. 3d at 872; *see also In re Royal Alice Properties, LLC*, 619 B.R. 839, 852 (Bankr. E.D. La. 2020) ("[T]his Court will not take judicial notice of or consider documents that are irrelevant to a motion to dismiss." (citing 21B Charles Alan Wright & Arthur Miller, Federal Practice & Procedure § 5104 (2d ed.)).

The irrelevance of Mr. McWashington's criminal convictions is apparent from Defendants' failure to reference them a single time in their motion to dismiss. *See generally* Doc. 10. Substantively, they have no bearing on Mr. McWashington's claims. Mr. McWashington's convictions for evading arrest do not tend to prove or disprove the reasonableness of using a police dog in this instance, when his identity was unknown to the officers at the time of the stop, and he was unarmed, in his car for most of the stop, did not have his keys, and clearly too incapacitated to comply with the officers' conflicting commands. Importantly, there is no allegation that Officer Solis was aware that Mr. McWashington had previously been convicted of evading arrest when he called eight other officers and a known-to-be aggressive and disobedient police dog in the course of a routine traffic stop for a non-violent offense. Plainly, Mr. McWashington's convictions do not and should not inform this Court's analysis of whether he has plausibly alleged that Defendants used unconstitutionally excessive force.

This Court should not judicially notice Mr. McWashington's convictions at this stage.

## CONCLUSION

For these reasons, this Court should deny Defendants' motion to dismiss on all grounds.

Dated:          August 12, 2024                    Respectfully submitted,

*/s/ Sumayya Saleh*
Sumayya Saleh*
Bina Ahmad**
Brittany Francis
sumayya@civilrightscorps.org
bina@civilrightscorps.org
brittany@civilrightscorps.org
Civil Rights Corps
1601 Connecticut Ave., NW,
Suite 800
Washington, DC 20009
Telephone: (202) 844-4975

Nii Amaa Ollennu†
Texas Bar No. 24098205
S.D. Tex. Bar No.3884094*
nii@naolawfirm.com
NO Law Firm, PLLC
1216 N. Central Expy, Suite 208
McKinney, TX 75070
Telephone: (469) 620-0333


* *pro hac vice* application pending
** admitted *pro hac vice*
† Attorney-in-Charge


*Attorneys for Plaintiff*
*Brandon McWashington*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 12, 2024, a true and correct copy of the foregoing document, and any attachments, were delivered to all opposing counsel(s) by electronic filing of same in accordance with the District ECF's service rules to:

> Michelle C. Taylor
> Senior Assistant City Attorney
> Attorney in Charge
> SBN: 224060889
> FBN: 3773284
> Tel. (832) 393-6248
> Michelle.Taylor2@houstontx.gov
> City of Houston Legal Department
> P.O. Box 368
> Houston, Texas 77001-0368

> */s/ Brittany Francis*
> Brittany Francis