IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BRANDON MCWASHINGTON,<br>    *Plaintiff*, | § § § | |
| VS. | § § § § | Civil Action No. 4:24-cv-02153 |
| JOSEPH P. RODGERS, II,<br>BRIAN G. CURTIS, NOE GARZA,<br>MELISSA A. HINOJOSA, KALID A.<br>KHALID, JOSUE D. RUIZ, MANUEL A.<br>SALAZAR, WARNER A. SOLIS, AND 8<br>RODOLFO A. TREVINO, JR.<br>    *Defendants* | § § § § § § § § | |

### DEFENDANT MELISSA A. HINOJOSA'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

    Comes now Houston Police Department Officer MELISSA A. HINOJOSA (hereinafter "Defendant Hinojosa") and hereby submits this Reply to Plaintiff's Response to Defendant's Motion to Dismiss Plaintiff's Amended Complaint [Doc. #35] and would respectfully show the following in support of her Motion to Dismiss:

1

## TABLE OF CONTENTS

Introduction ................................................................................................................................... 2
Argument And Authorities in Reply ........................................................................................... 2
    I.   This Court should take Judicial Notice of Public Record and Judicial Proceedings. ................ 2
    II.  This court should consider the video footage from the defendant's body worn camera videos. ................................................................................................................................... 3
    III. Defendant Hinojosa is protected by qualified immunity .............................................. 5
    IV. Plaintiff failed to plausibly allege any constitutional violation to support a Fourth Amendment violation no excess force claim ........................................................................ 6
       A.  No Fourteenth Amendment violation ............................................................................ 6
       B.  No Fourth amendment violation ..................................................................................... 6
      (i)  Plaintiff failed to allege facts which plausibly show an excessive force claim premised on Defendant Hinojosa unholstering and pointing her service weapon into the passenger side of his vehicle ............................................................................................................. 7
      (ii) Plaintiff failed to allege facts which plausibly show an excessive force claim in the use of the K9 ............................................................................................................................... 8
      (iii) No bystander liability. ..................................................................................................... 10
       C.  Plaintiff's claims are barred by statute of limitations .................................................. 11
Conclusion and Prayer ............................................................................................................... 13
Certificate Of Service ................................................................................................................ 15

**INTRODUCTION**

1. Defendant Hinojosa filed her Motion to Dismiss the Amended Complaint [Doc. #39]. In her Motion to Dismiss, Defendant Hinojosa:

    a. Motioned the Court to take judicial notice of the judicial proceedings and public records of Plaintiff's prior convictions for eluding officer.

    b. Motioned the Court to view the video footage of the Officer's Body worn Camera.

    c. Invoked Qualified Immunity and Motioned the Court to dismiss the Plaintiff's claim.

    d. Motioned the Court to Dismiss the Plaintiff's claims as it stated no plausible facts to support an excessive force claim under the fourth or fourteenth amendments.

    e. Motioned the Court to Dismiss any claims of bystander Liability; and

    f. Motioned the Court to Dismiss the Plaintiff's claim as it is barred by the Statute of Limitation

2. Plaintiff has responded to the Motion to Dismiss [Doc. #43], however Plaintiff's response does not overcome McWashington's failure to state plausible allegations of any constitutional violation to support a § 1983 claim for excessive force nor does the Plaintiff overcome the Defendant's qualified immunity, nor does McWashington overcome the claims barred by the statute of limitation. Additionally, Plaintiff has urged this Court to deny the Motion to take Judicial Notice of Public Records and the Defendants' motion for the court to view the complete footage of the Officer's body worn camera.

3. Defendant now submits this Reply in Support of the Defendant's Motion to Dismiss [Doc. #39], refuting the arguments of Plaintiff in his Response.

**ARGUMENT AND AUTHORITIES IN REPLY**

**I. This Court should take Judicial Notice of Public Record and Judicial Proceedings.**

4. In deciding a motion to dismiss for failure to state a claim, a court should consider (1) facts alleged in the complaint, (2) documents attached to the complaint, and (3) matters of

2

which the court may take judicial notice. *See Norris v. Hearst Trust*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007); *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 640 n. 2 (5th Cir. 2005).

5. Defendant moved for the Court to take judicial notice of Plaintiff's prior convictions for offenses similar to the encounter with the Defendants on the night in question. Plaintiff alleges that these records are not relevant to the case at hand and that they should not be viewed by the court. [Doc. #43 at pg. 33]

6. However, these records are relevant as they show Plaintiff's continual contempt of the authority of the officers. It shows that the Plaintiff was aware of the procedures required when he is given a lawful command by an officer, and the unlawful nature of his actions. Plaintiff was aware of what was required of him at the time of the initiation of the attempted traffic stop but continued to play games and displayed actual contempt for the rule of law and the authority of the officers.

7. This court should take judicial notice of these records as these records establish that Plaintiff was aware of what was required of him and chose not to comply with the officers. As such this Court should consider these records.

## II. This court should consider the video footage from the defendant's body worn camera videos.

8. When a defendant attaches an exhibit to a motion to dismiss to which the plaintiff refers in the complaint and is central to a plaintiff's claims, a reviewing court can properly consider the exhibit. *See Covington v. City of Madisonville*, 812 Fed. Appx. 219, 224 (5th Cir. 2020). "In so [attaching the exhibit], the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000).

9. The entire encounter with Plaintiff is on the body worn camera. Plaintiff makes detailed and specific allegations in the Amended complaint which can only come from the viewing and quoting from the officers' body worn cameras.

10. Plaintiff does not allege that these videos are altered or incomplete. Plaintiff only argues that the Court should accept their selective and incomplete versions of the facts; facts for which the Plaintiff could only himself learn from viewing and describing the content of the video as facts in his complaint.

11. When videotape exists and parties do not allege it has been tampered with, courts should "view[ ] the facts in the light depicted by the videotape" Scott v. Harris, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (; see also Klassen v. Gaines Cnty., No. 11-19-00266-CV, 2021 Tex. App. LEXIS 5631, at *10 (Tex. App.—Eastland July 15, 2021,no pet.) (mem. op.) (declining to adopt plaintiff's version of facts when video evidence plainly contradicted plaintiff's version).

12. As acknowledged by the Plaintiff, "the court can rely on evidence at the 12(b) stage where it is "referenced in a plaintiff's complaint and made available in a defendants' motion to dismiss". [Doc. #35 at 24]

13. Plaintiff objects to the Court consideration of the video even though they concede that "the alleged facts contain some quotes from the traffic stop [] video [] scattered through" [*Id.*], is without candor. Not only are specific quotes made in the Amended Complaint, but the Plaintiff also specifically describe alleged actions and conversations of the officers which were outside the purview of the Plaintiff and facts which could only be learned from the viewing of the footage and then using counsel self-serving description of the officer's actions. Those statements and actions could only be seen through footage on the officers' body worn camera. Those allegations learned

from the direct viewing of the footage include but are not limited to: whether it was officer noticed that there was a possibility that Plaintiff could not wall, and would see that Plaintiff was unarmed and did not pose a threat to officer safety [Doc. #35 at 3]; Plaintiff's description of Curtis, Garza, Hinojosa, Khalid and Trevino's conversation with dispatch, the officers' arrival time and actions on the scene could only be learned from quoting selective segments of the body cameras. [*Id*.] All these actions and conversations are central to the Plaintiff's claim of excessive force.

14.     As such for optimal completion, this court should view the entire body worn camera to determine the complete facts of the encounter. Plaintiff believes that the footages are "entirely consistent with Mr. Washington's allegations". [*Id*. pg. 24], if that is the case, then the court should make that determination for itself. The Plaintiff's quotes and description of actions of the officers outside the view of the Plaintiff are central to Plaintiff's claim for excessive force.

### III.     Defendant Hinojosa is protected by Qualified Immunity

15.     Defendant Hinojosa has invoked qualified immunity as a defense in this matter. "Because the officer invoked a qualified immunity defense, the burden shifts to Plaintiff to show the officer violated his clearly established rights. *Templeton v. Jarmillo,* 28 F.4th 618, 621 (5th Cir. 2022). "To overcome the officer['s] qualified immunity defense, a plaintiff must allege facts showing that the officer (1) 'violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Templeton*, 28 F.4th 621 (quoting Ashcroft v. Al-Kidd, 563 U.S. 731-35 (2011).

16.     "A right is clearly established [only] when it is defined 'with sufficient clarity to enable a reasonable official to assess the lawfulness of his conduct.'" *Id.* (citing *McClendon v. City of Columbia*, 305 F.3d 314, 331 (5th Cir. 2002). "Although a plaintiff does not need to identify a case 'directly on point' to meet this burden, he must identify caselaw that 'place [s] the statutory or constitutional question beyond debate.'" *Id*., (quoting al-Kidd, 563 U.S. 731, 741, (2011)).

5

"Citing caselaw generally referring to the prohibition on officers' using excessive force does not suffice. *Id.*13. The presumption of qualified immunity requires plaintiffs to plead specific facts and to identify relevant, clearly established law.

17. The Plaintiff here has failed to identify any relevant caselaw that place the actions of the officers beyond debate, nor has Plaintiff cited any relevant, clearly established law which depict the actions as the use of unconstitutional excessive force. Accordingly, this Court must dismiss this complaint as Plaintiff's allegations do not overcome Defendant Hinojosa's qualified immunity.

## IV. Plaintiff failed to plausibly allege any constitutional violation to support A Fourth Amendment violation/ no excess force claim

### A. No Fourteenth Amendment violation

18. Plaintiff has asserted that he did not bring forth a Fourteenth Amendment cause of action. Therefore, any possible claims under the Fourteenth Amendment are deemed abandoned and should be dismissed. [Doc. #43 pg. 21]

### B. No Fourth Amendment violation

19. Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. An officer is not responsible for results of necessary force. *Id.; Hill v. Carroll County*, 587 F.3d 230, 237 (5th Cir. 2009).

20. Here, there is no disputing that the Plaintiff violated the law in the presence of Defendant Hinojosa and other Houston Police Officers that night (resisting the officers). Plaintiff's encounter with Officer Solis warranted at the minimum an arrest or investigatory stop. Officer Solis attempted to initiate a traffic stop, Plaintiff refused and fled. Plaintiff finally came to a stop on a dark isolated dead-end street, but continued to defy the Officers' commands,

6

especially by rumbling through his vehicle. Officer Solis made many attempts to subdue and to have Plaintiff comply, without the use of a dog bite. The threat of the officers' weapon was apparently not enough. Plaintiff was provided with many warnings but refused and continued to escalate the circumstances. Plaintiff's own allegations demonstrate the measure and lengths that Defendant Hinojosa and the other Defendant Officers took to de-escalate the situation and yet maintain the safety of the officers. After several minutes of Plaintiff resisting the officers, reaching and searching into his vehicle when ordered not to; exiting and returning into his vehicle when commanded not to, Plaintiff would argue that the Officers should have just walked over to the Plaintiff unarmed and inquire as to his well-being.

21. The court's viewing of the body worn cameras will show that Plaintiff's actions constantly escalated the situation. The videos will clearly show Officer's Solis actions in attempting to conduct the investigatory stop and that the Plaintiff's actions escalated the circumstances and risk to Officer Solis and the other Officers. The use of some degree of physical coercion or threat was warranted under these circumstances, and Defendant Hinojosa and the other Officers did not violate Plaintiff's Fourth Amendment rights.

**(i)   Plaintiff failed to allege facts which plausibly show an excessive force claim premised on Defendant Hinojosa unholstering and pointing her service weapon into the passenger side of his vehicle**

22. Officers may use such force as is necessary to affect the goal of the stop: investigation, maintenance of the status quo, or officer safety. *Rhodes v. State of Texas,* 945 S.W.2d at 117 (Tex. Crim App. 1997). Allowances must be made for the fact that officers must often make quick decisions under tense, uncertain, and rapidly changing circumstances. *Id.*

22. Plaintiff does not challenge the fact that the stopping of McWashington's vehicle was valid and proper, nor do they challenge that McWashington did not obey the lawful command of the Officer Solis to pull over, or to exit the vehicle and crawl to the officer. These actions of the

Plaintiff confirm that Plaintiff was actively resisting Officer Solis in the entire encounter. In this matter Officer Solis was in a prolonged traffic stop with a non-compliant Plaintiff who continued to disobey lawful commands refusing to get out of the vehicle.

23. Plaintiff's argument is that Defendant Hinojosa's action of unholstering and brandishing of her service weapon into the passenger side of his vehicle (not at the Plaintiff) was a use of lethal force, and cites *Checki v. Webb*, 785 F.2d 534 (5th Cir. 1986) to support his argument. However, there has been no allegations that Defendant Hinojosa brandished the service weapon to terrorize the Plaintiff. Defendant Hinojosa was in the process of effectuating a lawful arrest, not terrorizing Plaintiff.

24. Plaintiff has failed to demonstrate that the Officers used unjustifiable excessive force by allegedly pointing her service weapon at the passenger side of Plaintiff's vehicle during the encounter. Here, Defendant Hinojosa and the other officers merely attempted to protect themselves and maintain the status quo from the uncertain and reckless actions of Plaintiff. Officers are "authorized to take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." *U.S. v. Hensley*, 469 U.S. at 235, 105 S.Ct. 675.

25. As such the Plaintiff has again failed to state any excessive force violation, and therefore Plaintiff's claims for excessive force resulting from the pointing of the Officer's weapon at the Plaintiff should be dismissed.

**(ii) Plaintiff failed to allege facts which plausibly show an excessive force claim in the use of the K9**

26. The "releasing a dog violates the Fourth Amendment where there are no "attempts to subdue [the suspect] without the use of a dog bite, [or to] provid[e] [the suspect] any warning," and where the suspect "was not suspected of any crime; did not pose an immediate safety threat to

8

officers or others; and was in need of emergency medical intervention due to self-harm and was not attempting to flee the officers." *Sligh v. City of Conroe*, 87 F.4th 290, 299 (5th Cir. 2023) (per curiam).

27. The facts here are similar to those in *Benjamin Benfer v. City of Baytown, Texas*, 2024 WL 4645878 (5th Cir. 2024). In *Benfer*, Plaintiff was pulled over for a traffic violation, and thereafter he resisted the lawful orders of the Police Officer. Eventually a K-9 was deployed, and Plaintiff Benfer was bitten, then arrested for resisting an officer. Benfer thereafter brought suit against the City of Baytown and the arresting officer, asserting claims under § 1983 and state law, alleging that officer violated Fourth and Fourteenth Amendments by stopping his vehicle, arresting him, using excess force by allowing police dogs to attack him, and prosecuting him, and seeking municipal liability. This Court dismissed arrestee's claims holding: that the stop was justified by reasonable suspicion at its inception; the stop was reasonable in duration; officer had probable cause to arrest driver for resisting arrest under Texas law; officer was not liable under § 1983 for malicious prosecution; the officer's decision to release police dog which bit handcuffed arrestee during traffic stop did not constitute clearly excessive force under circumstances; officer's use of police dog to subdue arrestee until he was handcuffed was objectively reasonable use of force that was not clearly excessive under circumstances; and the arrestee failed to state claim for municipal liability. Benfer appealed and the fifth Circuit affirmed the trial court's decision to dismiss the claim. The Court in applying the *Graham* factors found that the officers' decision to release the K-9 was a constitutional use of force. The Fifth Circuit found that Benfer repeatedly resisted arrest and walked away from the officer, ignoring the officer's warning that he had a dog who would bite Benfer if he continued to resist. *Id* at pg. 5.

9

28. Like the facts in *Benfer*, Plaintiff does not dispute that the stop was justified, nor do they dispute that reasonableness of the duration. Moreover, there is no disputing that the officer had probable cause to arrest driver for resisting arrest under Texas law and the fact that Plaintiff continued to repeatedly resist arrest and continued to remain in his vehicle, not showing his hands. It is also undisputed that this Plaintiff continued to ignore the officer's attempt to use lesser means to get him to comply with his lawful orders and he continued to ignore the warning that the dog would be deployed. As it was in *Bender*, the use of the K9 was justifiable and not a constitutional violation.

### (iii) No bystander liability.

29. Defendant Hinojosa did not fail to intervene or protect McWashington from an unjustifiable K9 attack.

30. It is well established that a defendant in a civil rights case cannot be held responsible for a constitutional violation which he or she neither participated in nor approved. *See Rizzo v. Goode*, 423 U.S. 362, 377 (1976); *Hamilton v. Foti*, 372 F. App'x 480, 486 (5th Cir. 2010). Plaintiffs may be attempting to assert something akin to a bystander liability theory. *See Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 343 (5th Cir. 2020) ("An officer is liable for failure to intervene when that officer: (1) knew a fellow officer was violating an individual's constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm but nevertheless, (4) chose not to act.") (*citing Whitley v. Hanna*, 726 F.3d at 646). Bystander liability requires more than mere presence in the vicinity of the violation; the Fifth Circuit also considers whether an officer 'acquiesced in' the alleged constitutional violation. *Id.* To the extent Plaintiffs here are asserting a theory of bystander liability, Plaintiffs fail to allege a claim for which relief can be granted.

31. As previously discussed, there was no violation of an individual constitutional right. Plaintiff has not identified any clearly established law applying bystander liability on similar facts. Plaintiff has the burden to demonstrate that the law was "clearly established"—that, as of June 7, 2022, any reasonable officer would have known that the Constitution required them to intervene. *Joseph*, 981 F.3d at 345.

**C.   Plaintiff's Claims are Barred by Statute of Limitations**

32. Federal Rule 4(e) allows the following methods of serving an individual, by:

(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

(2) doing any of the following:

(A) delivering a copy of the summons and of the complaint to the individual personally.

(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

FED. R. CIV. P. 4(e).   Under subsection (1) above, Texas law allows service by:

(1) delivering to the defendant, in person, a copy of the citation, showing the delivery date, and of the petition; or

(2) mailing to the defendant by registered or certified mail, return receipt requested, a copy of the citation and of the petition.

[… alternate methods upon motion.]

TEX. R. CIV. P. 106(a).

33. Additionally, in Texas, a plaintiff must not only file a suit but also use due diligence in procuring service on the defendant to toll the statute of limitations. *Gant v. DeLeon,* 786 S.W.2d 259, 260 (Tex.1990).

34. In Texas to satisfy a statute of limitations: filing the petition and achieving service of process a person must "bring suit" for personal injury not later than two years after the day the cause of action accrues. Tex. Civ. Prac. & Rem. Code § 16.003(a); see also Tex. Gov't Code §

11

311.016 (stating the word "must" indicates a condition precedent). "To 'bring suit' is a term of art reflecting the traditional requirements to satisfy a statute of limitations: filing the petition and achieving service of process." *Tanner II*, 689 S.W.3d at 300. As the Texas Supreme Court has recognized, timeliness for just one will not do. Id. Thus, while service follows filing, both are prerequisites to "bringing" the suit. Id.

35. Plaintiff argues that the Defendant had actual notice of these litigation. However, actual notice of litigation does not satisfy the requirement of proper service of a summons under Rule 4. *McGuire v. Sigma Coatings, Inc.,* 48 F.3d 902, 907 (5th Cir. 1995). Rather, Rule 4(c) sets out the procedure for service that must be satisfied if the court is to obtain jurisdiction over a defendant. *Burditt v. U.S. Steel Corp.*, 2014 WL 713212, *1 (S.D. Tex. 2014) (citation omitted). **Strict compliance** with the requirements of Rule 4 is mandatory due to jurisdictional issues presented with improper service. *See Murphy Bros.*, 526 U.S. at 350-351; *Carimi*, 959 F.2d at 1349; *see also Delta S.S. Lines, Inc. v. Albano*, 768 F.2d 728 (5th Cir. 1985) (valid service of process is an essential part of the procedure for establishing and proving personal jurisdiction). In the absence of valid service of process, proceedings against a party are void. *Aetna Business Credit, Inc. v. Universal Décor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir. 1981).

**Plaintiff's lack of diligence in service of citation denies relation back.**

36. The plaintiff argues that the efforts they put forth prior to the expiration of limitation should make the service of process relate back to the filing of the petition. With this argument, Plaintiff misapplied the relation back requirement under Texas law.

37. As the Texas Supreme Court recently confirmed, "[t]here is no freestanding 'diligent-service requirement'—there is only a requirement of *timely* service." *Tanner II*, 689 S.W.3d at 298 (emphasis in original). Diligence in attempting service prevents the running of

limitations for as long as a plaintiff truly labors to achieve service of process. *Id*. "If service is diligently effected after limitations has expired, the date of service will relate back to the date of filing." *Id*. (quoting *Proulx v. Wells*, 235 S.W.3d 213, 215 (Tex. 2007)); *accord Ashley v. Hawkins*, 293 S.W.3d 175, 179 (Tex. 2009). Diligence for its own sake, in other words, is immaterial. *Id*. Rather, exercising diligence is merely a means to the end of establishing timely service, the absence of which can doom a plaintiff's claim. *Id*.

38. It is undisputed that Plaintiff did not timely bring suit in this matter. Nor did Plaintiff use due diligence in procuring service on the defendant to toll the statute of limitations. Here, Plaintiff filed its original Petition on June 7, 2024 (Amended Petition filed on June 8, 2024), application for citation to serve Defendant Hinojosa was not made until June 18, 2024 (nine days after the expiration of the statute of limitations). Defendant Hinojosa has established that she was not served with citation until December 18, 2024, ***more than six months*** after the expiration of the limitations period.

39. Therefore, Plaintiff's claims for excessive force and bystander liability are untimely, and denies this court of subject matter jurisdiction.

## CONCLUSION AND PRAYER

For the reasons stated, Plaintiff has failed to state a claim upon which relief can be granted against Defendant Hinojosa and further opportunities to amend would be futile. Defendant Hinojosa respectfully prays that the honorable Court grant this motion and dismiss Plaintiff's claims against her and grant all other relief to which Defendant may be entitled.

    Respectfully submitted,

    **ARTURO G. MICHEL**
    **City Attorney**

                                        CHRISTY MARTIN
                                        Section Chief, Torts/Civil Rights

By:    */s/ Michelle C. Taylor*
        MICHELLE C. TAYLOR
        Senior Assistant City Attorney
        Attorney in Charge
        Texas Bar No. 24060889
        Tel. (832) 393-6248
        Michelle.Taylor2@houstontx.gov
        City of Houston Legal Department
        P.O. Box 368
        Houston, Texas 77001-0368
        Main (832) 393-6491
        Fax (832) 393-6259

        **ATTORNEYS FOR DEFENDANT HINOJOSA**

CERTIFICATE OF SERVICE

I hereby certify that pursuant to the Federal Rules of Civil Procedure, a true and correct copy of the foregoing was filed via CM/ECF and served via electronic filing manager to the following:

No Law Firm PLLC
Nii Amaa Ollennu
1216 N. Central Expy, Suite 208
McKinney, Tx. 75070

Civil Rights Corps
Bina Ahmad
bina@civilrightscorps.org
Brittany Francis
brittany@civilrightscorps.org

                                             */s/ Michelle C. Taylor*
                                             MICHELLE C. TAYLOR