## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| BRANDON MCWASHINGTON, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:24-cv-2153 |
| | § | |
| JOSEPH P. RODGERS II, BRIAN G. | § | |
| CURTIS, NOE GARZA, MELISSA A. | § | |
| HINOJOSA, KHALID H. KHALID, JOSUE D. | § | |
| RUIZ, MANUEL A. SALAZAR, WARNER A. | § | |
| SOLIS, and RODOLFO A. TREVINO, JR., | § | |
| | § | |
| *Defendants.* | § | |

## <u>ORDER</u>

Pending before the Court are multiple motions to dismiss filed by the defendants in this

case. Defendants Brian Curtis ("Curtis"), Noe Garza ("Garza"), Melissa Hinojosa ("Hinojosa"),

Kalid Khalid ("Khalid"), Josue Ruiz ("Ruiz"), Manuel Salazar ("Salazar"), Warner Solis ("Solis"),

and Rodolfo Trevino, Jr. ("Trevino") (collectively, the "Defendants") filed a Motion to Dismiss

the Amended Complaint. (Doc. No. 10).[1] Plaintiff Brandon McWashington ("Plaintiff" or

"McWashington") responded (Doc. No. 15), and the aforementioned Defendants replied (Doc. No.

19). Garza then filed an Amended Motion to Dismiss the Amended Complaint (Doc. No. 28), to

which Plaintiff responded (Doc. No. 33) and Garza replied (Doc. No. 34). Solis also filed a separate

Motion to Dismiss the Amended Complaint (Doc. No. 31), to which Plaintiff responded (Doc. No.

35) and Solis replied (Doc. No. 36). Lastly, Hinojosa filed a separate Motion to Dismiss the

Amended Complaint (Doc. No. 39), to which Plaintiff responded (Doc. No. 43) and Hinojosa

replied (Doc. No. 44). Since the motions to dismiss involve similar arguments under Federal Rule

---

[1] Defendant Joseph Rodgers was only recently served and therefore has not responded to this lawsuit, nor has he joined
in any of the pending motions. The defined term "Defendants" therefore does not include Rodgers for this reason.

of Civil Procedure 12(b)(6), the Court will address the motions together in a single order. Having considered the pleadings, the parties' briefings, and the law, the Court GRANTS IN PART and DENIES IN PART the pending motions to dismiss. (Doc. Nos. 10, 28, 31, and 39).

## I.    Background

Plaintiff brings this 42 U.S.C. § 1983 action against Defendants for alleged violations of his constitutional rights. (Doc. No. 4). These alleged violations arise from a traffic stop, which eventually escalated to result in a police K9 biting Plaintiff's arm. Notably, Plaintiff did not join the City of Houston (Houston Police Department) as a defendant. As such, Plaintiff seeks to impose liability for the alleged § 1983 violation on each Defendant in their individual capacity.

The facts of this case are relatively undisputed. Much of what has been alleged was caught on video. As such, the parties primarily contest the legal ramifications as they apply to the facts. The alleged facts recounted below are drawn from Plaintiff's Complaint. McWashington contends that on June 7, 2022 at approximately 11:00 p.m., he was driving in Houston, Texas when Houston Police Officer Solis initiated a traffic stop for a suspected DWI and for driving without his headlights on. (Doc. No. 4 at 4). Plaintiff pulled over roughly 0.6 miles after Solis turned his lights on. (*Id.*). Plaintiff then opened his car door and attempted to exit the vehicle. (*Id.*). Officer Solis instructed Plaintiff to stay in his car, and Plaintiff complied. (*Id.* at 5). Officer Solis, now positioned behind his vehicle's door with his service weapon pointed at Plaintiff, ordered Plaintiff to throw his keys on the ground and exit the car with his hands in view. (*Id.*). Instead of following the commands, Plaintiff replied, "I ain't got them," apparently referencing his keys. (*Id.*). Plaintiff suggests that, at this point, his voice was "slow and audibly slurred." (*Id.*).

Defendant Solis then reported to dispatch that McWashington was refusing to exit his car as commanded. (*Id.*). Within two minutes of McWashington pulling over, Defendant-Officers

2

Curtis, Garza, Hinojosa, Khalid, and Trevino arrived on the scene. Solis continued to point his gun at the driver's side door. The responding officers likewise unholstered their guns and aimed them at McWashington's vehicle. (*Id.*). According to Plaintiff, Officer Khalid aimed an AR-15 at the vehicle rather than a typical service weapon. (*Id.*)

While Officer Solis continued to shout at McWashington to exit his car, Officer Curtis ordered Plaintiff to "at least" put his hands on the steering wheel. (*Id.* at 7). Plaintiff contends that these conflicting orders confused him, so he remained in his car. (*Id.*). At this point, McWashington's driver's side door was open, but Plaintiff remained seated with both feet outside the car. (*Id.*). McWashington then visibly struggled to exit the car, prompting Officer Solis to repeatedly ask Plaintiff if he could walk or if he needed help, as well as asking the other officers if they thought Plaintiff could walk. (*Id.* at 8). Officer Solis inquired of his fellow officers whether they though McWashington was "on something." (*Id.*). Roughly twelve minutes after he pulled over, Plaintiff got out of his car and sat on the ground with his back facing the officers. (*Id.*). A couple minutes later, McWashington slowly got back into his car and closed the door. (*Id.* at 9).

The officers then resumed their commands for Plaintiff to exit his vehicle. (*Id.*). McWashington contends that the officers on the scene could tell he was too intoxicated to follow their commands, yet continued to yell conflicting orders at him as if he could comply. (*Id.*). Nevertheless, McWashington did follow Officer Solis's next command: to open his car door. (*Id.*). Roughly seventeen minutes into the traffic stop, Defendant-Officer Rodgers arrived on the scene with his K9 "Rico." (*Id.* at 10). Officer Garza advised Officer Rodgers that Plaintiff "might be intoxicated the way he is acting, real sluggish, real slow." (*Id.*). After Rico began whining and barking while pulling towards Plaintiff's car, McWashington closed his car door yet again. (*Id.*). Officer Solis again ordered Plaintiff to open his car door and Plaintiff complied. (*Id.* at 11).

Officer Rodgers subsequently let go of Rico's leash, allowing the K9 to charge McWashington's car. (*Id.*). In response, Plaintiff closed his car door before Rico could reach him. (*Id.*). Officer Rodgers then ran towards the car, grabbed Rico's leash once again, and opened the car door. (*Id.*). Officer Solis and Plaintiff then engaged in a short battle of control over the position of the car door—McWashington closing the door each time Officer Solis would open it. (*Id.*).

While McWashington and Officer Solis struggled over the door's position, Rico turned and bit Officer Curtis, latching onto his bicep. (*Id.*). After Rico released Officer Curtis's arm, Officer Rodgers opened McWashington's car door once again. (*Id.*). Now standing within an arm's length of Plaintiff, Officer Rodgers shoved Rico onto Plaintiff. (*Id.* at 12). Rico latched onto his forearm and began to shake his forearm vigorously. (*Id.*). McWashington did not fight back or even cry out in pain. (*Id.*). Rico continued to bite and shake Plaintiff's forearm as Officer Rodgers pulled Plaintiff from the car and placed him face down onto the ground. (*Id.*). While Officers Garza, Hinojosa, and Ruiz handcuffed his right arm, the remaining officers stood and watched Rico bite Plaintiff. (*Id.*).

Finally, about 30 seconds after the initial bite—and only once McWashington had been handcuffed while he lay still and silent flat on his stomach—Rico let go of Plaintiff's arm. (*Id.*). Officer Rodgers commanded Rico to release Plaintiff's arm four times before the K9 obeyed. (*Id.*). At this time, Officers Hinojosa, Salazar, and Solis applied a tourniquet to Plaintiff's arm to prevent him from "bleeding out." (*Id.* at 13). Officer Trevino later stated that he did not "think [Plaintiff] could've even got out of the car. He opened the door, and he threw himself out and struggled to get back in." (*Id.*). Ultimately, Officer Garza instructed Officer Solis to charge Plaintiff with evading arrest in a vehicle "because he got bit." (*Id.*). After the tension of the incident subsided, Officer Curtis suggested to Officer Rodgers that he needed to train Rico because Rico was

4

"freaking out" on the scene. (*Id.* at 14). Officer Rodgers responded that Rico was trained and that it was well known that K9s bite without command. (*Id.*).

McWashington was transported via ambulance from the scene to Ben Taub Hospital, where he was released from police custody. (*Id.* at 16). The day after the incident, Plaintiff underwent surgery for nerve, artery, and tendon repair. (*Id.*). His forearm and hand allegedly suffered permanent nerve damage as a result of the dog bite. (*Id.* at 17).

Plaintiff asserts a § 1983 claim against each officer in their individual capacity for violations of the Fourth Amendment's prohibition against excessive force. McWashington asserts Defendants used excessive force when they aimed their service weapons at him during the incident. He also advances a theory of bystander liability against Defendants for failing to intervene or prevent the K9 attack. Defendants filed this Rule 12(b)(6) motion to dismiss on several grounds. Defendants allege that Plaintiff failed to plausibly allege the Defendants' involvement in any constitutional violation, Defendants have qualified immunity, and Plaintiffs' claims are barred by statute of limitations. (Doc. Nos. 10, 28, 31, and 39).

## II.    Legal Standard

A defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting

5

*Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). A court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

### III.    Analysis

Plaintiff alleges, via this § 1983 action, that Defendants violated his Fourth Amendment rights by the unlawful use of excessive force. Plaintiff asserts four counts: 1) "Defendant Rodgers violated Mr. McWashington's Fourth Amendment right to be free of excessive and unreasonable force by unjustifiably siccing his police K9 on Mr. McWashington;" 2) "Defendant Solis violated Mr. McWashington's Fourth Amendment right to be free of excessive and unreasonable force by quickly and unjustifiably unholstering and pointing his lethal duty weapon at Mr. McWashington;" 3) "Defendants Garza, Hinojosa, Khalid, Ruiz, Salazar, Solis and Trevino violated Mr. McWashington's Fourth Amendment right to be free of excessive and unreasonable force by failing to intervene or protect him from an unjustifiable K9 attack;" and 4) "Defendants Curtis, Hinojosa, Khalid, Ruiz, Salazar, and Trevino violated Mr. McWashington's Fourth Amendment right to be free of excessive and unreasonable force by quickly and unjustifiably unholstering and pointing their lethal duty weapons at Mr. McWashington." (Doc. No. 4). Since Defendant Rodgers

is the sole target of the first cause of action but has not joined in any motion to dismiss pending before the Court, it will not address the first cause of action.

As noted above, Defendants contend that Plaintiff either failed to plausibly allege the Defendants' involvement in any constitutional violation to support his § 1983 claim and failed to overcome Defendants' qualified immunity. (Doc. No. 18 at 19, 24). Additionally, Defendants raise a statute of limitations defense.

### A. Consideration of Body Camera Footage

Defendants request that the Court consider the police body-worn camera footage of the incident in question. Plaintiff objects, but ultimately concedes that the video is "entirely consistent" with his allegations. As an initial matter, the Fifth Circuit has "note[d] approvingly" that "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim.'" *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). According to the Fifth Circuit, "[i]n so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Id.* at 499.

Here, the footage is central to his claim, and, although Plaintiff did not explicitly cite to the footage in his Complaint, the footage was certainly referenced by virtue of the fact that the Complaint quotes extensively from taped conversations that came from the body camera footage. *See* (Doc. No. 4). In response to Defendants' request that the Court consider the footage, Plaintiff suggests that the Court follow the decision in *Polnac v. City of Sulphur Springs*, 555 F. Supp. 3d 309 (E.D. Tex. 2021). There, the court held that the body camera footage was not a proper point of consideration at the Rule 12(b)(6) stage. *Id.* at 326. The court reasoned that the plaintiff "merely

provide[d] various statements in quotations marks," which it found insufficient as a reference to the footage. *Id.* at 325–26. It stated that "[w]hile it is possibly [sic] that the quotes did, in fact, come from the body camera footage, it is equally likely that the quotes came from [the plaintiff's] own recollection." *Id.* at 325. That is not the case here. Here, Plaintiff's Complaint admits that McWashington was intoxicated at the time of the incident to the point that he struggled to comply with the officers' orders as a result. (Doc. No. 4 at 8). Moreover, the Complaint quotes statements that occurred outside of McWashington's presence. *See, e.g.,* (*Id.*) ("Defendants joked and bragged about siccing a dog on an unarmed and compliant Black man while debriefing his arrest."). The footage also confirms that many of the quotes cited in the Complaint are taken from conversations that Plaintiff could not have possibly heard himself. Thus, it is not "equally likely" that the quotes came from Plaintiff's own recollection. Almost certainly the quotes were taken directly from the body-worn footage. As such, the Court will consider the footage as being "referred to in [his] complaint and [ ] central to [his] claim." *Collins,* 224 F.3d at 498–99.

### B. *Statute of Limitations*

Defendants contend that Plaintiff's claims are barred by the statute of limitations. The parties agree that, as the forum state, Texas state law supplies the limitations period for this action. *See Johnson v. Harris Cnty.,* 83 F.4th 941, 945 (5th Cir. 2023) (finding that limitations for a § 1983 claim are determined by the forum state's general or residual personal-injury limitations period). The parties likewise agree that the limitations period is two years, and that it expired June 6, 2024—the day Plaintiff filed suit in this Court. The Texas statute providing the limitations period requires a plaintiff to "bring suit" not later than two years after the day the cause of action accrues. TEX. CIV. PRAC. & REM. CODE § 16.003(a). Defendants maintain that McWashington's claims are barred because the Supreme Court of Texas has defined "bring suit," as found in the applicable

8

statute of limitations, to mean filing the petition *and* achieving service of process. *Texas State Univ. v. Tanner*, 689 S.W.3d 292, 300 (Tex. 2024). Since Plaintiff did not also serve Defendants within the limitations period, Defendants contend that Plaintiff failed to "bring suit" as proscribed by the relevant statute and his claims are barred by the statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE § 16.003(a).

Defendants' argument is without merit. The United States Supreme Court has held that "when the underlying cause of action is based on federal law and the absence of an express federal statute of limitations makes it necessary to borrow a limitations period from another statute, the action is not barred if it has been 'commenced' in compliance with Rule 3 within the borrowed period." *West v. Conrail*, 481 U.S. 35, 39 (1987). More specifically, the Fifth Circuit has held that Texas's "due diligence" requirement (requiring that a plaintiff "must not only file suit but also use due diligence in procuring service on the defendant in order to toll the statute of limitations") does not apply to section 1983 actions in Texas federal court. *Gonzales v. Wyatt*, 157 F.3d 1016, 1021 n.1 (5th Cir. 1998) (citing *Jackson v. Duke*, 259 F.2d 3, n.6 (5th Cir. 1958)).[2]

McWashington's § 1983 cause of action is based on federal law and the filing of his Complaint "commenced" the action in compliance with Federal Rule of Civil Procedure 3. Thus, his action is not barred by the limitations period.

---

[2] The Supreme Court of Texas has recently clarified that courts should consider diligence the exception rather than the rule. *Tanner*, 689 S.W.3d at 299. Even if the state law "due diligence" requirement did apply, it would not compel dismissal. In *Tanner*, the Court held that "the relevant inquiry is whether the plaintiff acted as an ordinarily prudent person would have acted under the same or similar circumstances and was diligent up until the time the defendant was served." *Id.* Whether a plaintiff is diligent in attempting service is a "necessarily fact-intensive inquiry." *Id.* at 299. Here, Plaintiff served every named defendant within nine months of the limitations period's expiration. That being the case, even if the Court needed to address the issue of diligence, it would not dismiss this action based on a statute of limitations defense at this stage because it could not find that Plaintiff lacked due diligence to procure service as a matter of law. *See Martinez v. Becerra*, 797 S.W.2d 283, 285 (Tex. App.—Corpus Christi 1990, no writ) (finding fact issue on due diligence despite fifteen-month delay in service after limitations expired where plaintiff's counsel outlined efforts to obtain service); *see also Valdez v. Charles Orsinger Buick Co.*, 715 S.W.2d 126, 127 (Tex. App.—Texarkana 1986, no writ) (finding fact issue on due diligence despite eight-month delay where counsel explained attempts to procure service).

## C. *Qualified Immunity*

Defendants argue Plaintiff has failed to plausibly allege Defendants' involvement in any constitutional violation to support a § 1983 claim or overcome the Defendant's qualified immunity. Plaintiff, of course, contends that he has plausibly alleged the Defendants violated his right to be free of unconstitutionally excessive force. Further, Plaintiff obviously disagrees that Defendants are entitled to qualified immunity.

Qualified immunity provides government officials with immunity from suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). When evaluating a defendant's qualified immunity defense at the motion to dismiss stage, a district court must first find "that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *See Est. of Bonilla v. Orange Cnty.*, 982 F.3d 298, 306 (5th Cir. 2020) ("Once a defendant asserts the qualified immunity defense, '[t]he plaintiff bears the burden of negating qualified immunity.'") (quoting *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016)). A plaintiff seeking to rebut qualified immunity at this stage must allege: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 732 (2011). Both questions are matters of law. *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016).

As for the first prong of the qualified-immunity analysis—whether the Defendants violated a statutory or constitutional right—Plaintiff alleges that Defendants violated his Fourth Amendment rights by using excessive force. To prevail on an excessive force claim, Plaintiff must "establish (1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Ratliff v. Aransas Cnty.*,

10

948 F.3d 281, 287 (5th Cir. 2020). Plaintiff alleges that Defendants violated his right to be free from excessive force in two ways: 1) by failing to intervene or protect him from an unjustifiable K9 attack; and 2) by quickly and unjustifiably unholstering and pointing their lethal duty weapon at McWashington.

> i.    *Excessive Force – Bystander Liability Claim (Count 3)*

In count three of his Complaint, Plaintiff alleges that "Defendants Garza, Hinojosa, Khalid, Ruiz, Salazar, Solis and Trevino violated [his] Fourth Amendment right to be free of excessive and unreasonable force by failing to intervene or protect him from an unjustifiable K9 attack." (Doc. No. 4 at 21). To show potential bystander liability for excessive force, a plaintiff must show that the bystander officers "knew a fellow officer was violating an individual's constitutional rights." *Joseph ex rel. Joseph v. Bartlett*, 981 F.3d 319, 343 (5th Cir. 2020). This requires a showing that the "fellow officer" plausibly violated that individual's rights. Here, McWashington alleges that Officer Rodgers (via K9 Rico) violated his Fourth Amendment right to be free from excessive police force, and that the remaining officers knew Rodgers was violating his rights and failed to intervene or protect him. Thus, even though Rodgers did not join any motion to dismiss before the Court, it still must consider whether Rodgers plausibly violated McWashington's rights.

As previously noted, Plaintiff alleges Rodgers violated his Fourth Amendment right to be free of excessive force, which requires Plaintiff to show: (1) he suffered an injury; (2) the injury was caused directly and only by a use of force that was clearly excessive; and (3) the excessiveness of the force was clearly unreasonable. *Ratliff*, 948 F.3d at 287. The Court must address whether Rodgers plausibly violated Plaintiff's rights, and whether the bystander officers knew that Rodgers was violating Plaintiff's rights, before addressing the second prong of the qualified immunity rebuttal—that the right was 'clearly established' at the time of the challenged conduct.

*Injury*: It is undisputed that Plaintiff was injured by his encounter with Rico. Plaintiff's Complaint includes multiple, graphic photos of his arm after the incident. In fact, Plaintiff contends that Defendant Trevino confirmed that McWashington was injured when he stated "[t]his is probably the worst one I've ever seen. I've seen puncture wounds. I've never seen it like this." (Doc. No. 4 at 14). Plaintiff also alleges that he now suffers permanent damage from the bite. (*Id.* at 17). Thus, Plaintiff has sufficiently pleaded injury.

*Causation*: The second element of an excessive force case requires a plaintiff to show his or her injuries were "directly and only" a result of the excessive force. While Defendants, of course, contest that the force was excessive, there is no plausible argument that some level of injury to McWashington's forearm was not caused by the K9 bite. Thus, McWashington has sufficiently pleaded that his injury was caused by the force used by Defendant Rogers and his K9.

*Reasonableness*: The third prong considers whether the force used was clearly unreasonable. Whether a force is reasonable is "judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Courts assess "reasonableness" using an objective standard and must account for the fact that police are "forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397. Three factors inform whether a use of force was excessive in the Fourth Amendment context: (1) the severity of the crime committed; (2) whether the suspect posed an immediate threat to the safety of officers or others; and (3) whether the suspect was resisting arrest or attempting to evade arrest by flight. *Id.* at 396.

The Fifth Circuit's decision in *Cooper v. Brown* is instructive. Cooper, like Plaintiff here, was pulled over on suspicion of driving under the influence. *Cooper*, 844 F.3d at 521. Unlike

12

Plaintiff in the case at bar, Cooper then panicked and fled the scene on foot. *Id.* The officer that pulled Cooper over, Pressgrove, then called for backup. *Id.* Pressgrove testified that he did not know whether Cooper was armed and he had no reason to believe that Cooper had a weapon. *Id.* The responding officer, Brown, arrived with his police K9. *Id.* Shortly thereafter, Brown and his K9 found Cooper in his hiding place. *Id.* The K9 then attacked Cooper and continued to bite his calf for one to two minutes. *Id.* During that attack, Cooper did not attempt to flee or fight the dog off. *Id.* Brown later testified that while the K9 continuously bit Cooper, he could see that Cooper's hands were empty, but nonetheless did not order the K9 to release its hold on Cooper until after he had finished handcuffing Cooper. *Id.* Cooper sued Brown under § 1983, alleging that Brown's use of force was objectively unreasonable under the Fourth Amendment. *Id.*

The Fifth Circuit found that the first *Graham* factor—the severity of the alleged crime leading to the stop—weighed in favor of the responding officer, but the remaining factors weighed "heavily" for Cooper. *Id.* at 522. The Circuit found that DUI is a serious offense, but that "[n]o reasonable officer could conclude that Cooper posed an immediate threat to Brown or others." *Id.* It reasoned that Cooper was not suspected of committing a violent offense, and, at the time in question, Brown could see Cooper's hands and knew he had no weapon. Brown argued that the force was reasonable because Cooper had not yet been searched, and thus he remained a threat. *Id.* at 523, n.2. While "this will sometimes be a relevant fact—for example, where a plaintiff is suspected of committing a violent crime—it is not enough, standing alone, to permit a reasonable officer to characterize a suspect as an immediate threat." *Id.* As for the third factor—whether the suspect was resisting arrest or attempting to evade arrest by flight—the Circuit found that Cooper was not actively resisting arrest or attempting to flee during the time Brown allowed the dog to continue to bite Cooper. *Id.* at 523. Relying on these facts, in addition to expert testimony that

13

there was no reason for the dog to continue the attack once Cooper was on his stomach, the Circuit concluded that Brown's use of force was objectively unreasonable. *Id.* at 524.

In resolving the pending motions, this Court, like the *Cooper* Court, need not focus on the initial bite due to the longevity of the biting incident.[3] Defendant Rodgers allowed the dog to thrash at Plaintiff's arm for roughly thirty seconds; all the while, Plaintiff remained still and silent with nothing visibly in his hands. At worst, Plaintiff was suspected of a serious offense, a DUI (though Plaintiff alleges he was only accused of "slow rolling" through a stop sign and not immediately pulling over when Officer Solis flashed his lights at him). Still, the remaining two elements weigh in favor of McWashington. Element two concerns whether Plaintiff posed an immediate threat to the safety of the officers or others. Plaintiff was still in his vehicle at the time that Rico first bit his forearm, and arguable the officers might be concerned that he may have access to a weapon that Rodgers could not see. Still, at some point early in the attack (if not before Rodgers deployed the K9 upon opening the car door), Rodgers could see Plaintiff's hands and knew that Plaintiff did not have a weapon. More importantly, Rodgers then failed to recall the K9 while Plaintiff was handcuffed and face down on the ground. The *Cooper* Court found similar facts to be indicative of unreasonable conduct, and a reasonable jury could find the same here.

As for element three, McWashington was not "actively resisting" arrest or attempting to flee as Rico continued to gnaw at Plaintiff's arm. Even assuming the Court agrees with Defendants' contention that Plaintiff's sluggishness in responding to commands amounted to "resistance," that behavior does not justify the use of the amount of force pleaded here. "Officers may consider a

---

[3] Though the Court focuses here on the longevity of the attack, it is also questionable whether the initial bite was reasonable. Defendant Rodgers brought the dog up to Plaintiff's car door. With the dog still in his control, Rodgers then opened the car door and was roughly an arm's length away from Plaintiff, who was sitting in the driver's seat. At this point Rodgers, in all likelihood, could have seen that Plaintiff had nothing in his hands and could have removed him from the car without deploying the dog. Instead, Rodgers released his hold on the dog and seemingly thrust the dog onto Plaintiff before pulling him from the vehicle. Based on these facts, it is possible that a reasonable jury could find that the initial K9 encounter was clearly unreasonable.

suspect's refusal to comply with instructions during a traffic stop in assessing whether physical force is needed to effectuate the suspect's compliance. However, officers must assess not only the need for force, but also 'the relationship between the need and the amount of force used.'" *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (citations omitted). "For instance, where an individual's conduct amounts to mere 'passive resistance,' use of force is not justified." *Trammell v. Fruge*, 868 F.3d 332, 341 (5th Cir. 2017).

In *Trammell v. Fruge*, another case involving the allleged use of excessive force, the Fifth Circuit determined that the plaintiff's attempt to pull his arm away from an officer was insufficient resistance to warrant being tackled to the ground by that officer. *Id.* The evidence demonstrated that the plaintiff was neither aggressive nor violent, was suspected of only a minor offense, and there was little indication he would flee. *Id.* at 342. As such, the Fifth Circuit opined that a reasonable jury could conclude that the officers' use of force was clearly excessive to the circumstances. *Id.* Here, the Complaint alleges and the body camera footage does not contradict the claim that McWashington was not "actively resisting." Like the plaintiff in Trammell, McWashington suggests that any resistance was passive. Even if McWashington struggled to comply with commands while the K9 bit his arm, it cannot be said, as a matter of law, that a person is "actively resisting" arrest when they fail to comply with commands while being bitten by a police K9. *See Cooper*, 844 F.3d at 523, n.3 (citing *Goodwin v. City of Painesville*, 781 F.3d 314, 325 (6th Cir. 2015) (observing that the plaintiff's "failure to present his hands to be cuffed was due to Taser-induced involuntary convulsions" and that this could not constitute active resistance under *Graham*); *Kopf v. Wing*, 942 F.2d 265, 268 (4th Cir. 1991) ("We believe that a jury could find it objectively unreasonable to require someone to put his hands up and calmly surrender while a police dog bites his scrotum."); *Malone v. City of Fort Worth*, No. 4:09–CV–634–Y, 2014 WL

5781001, at *10 n.5 (N.D. Tex. Nov. 6, 2014) ("The Court wonders how a man, who is prone on the ground and being attacked by a dog, can reasonably be expected to expose his hands and unflinchingly hold them behind his back.")). Plaintiff also pleaded, and the body cam video supports the claim, that McWashington did not move nor make any sound as the K9 bit his arm. Thus, this Court cannot hold as a matter of law that his behavior amounted to "active resistance."

Finally, a court may look to the severity of a plaintiff's injuries as evidence of excessive force. *Deville*, 567 F.3d at 168. "In evaluating excessive force claims, courts may look to the seriousness of injury to determine 'whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction as is tantamount to a knowing willingness that it occur.'" *Brown v. Lippard*, 472 F.3d 384, 386–87 (5th Cir. 2006). As noted above, Defendant Trevino allegedly stated "[t]his is probably the worst [dog bite] I've ever seen. I've seen puncture wounds. I've never seen it like this." (Doc. No. 4 at 14). Moreover, Plaintiff has alleged that Rodgers decided to utilize the K9 despite the fact that he knew that Rico could not be controlled. Plaintiff alleges that Rico attacked a citizen less than 24 hours prior to the incident in question without his handler issuing an order to do so, and that Rico also bit Officer Curtis just a few seconds before Defendant Rodgers deployed the K9 on McWashington. (Doc. No. 4 at 11).

Taking the facts in the light most favorable to Plaintiff, Plaintiff has pleaded sufficient facts to suggest that Defendant Rodgers violated Plaintiff's Fourth Amendment rights because the *degree* of force Rodgers used in this case was not justifiable under the circumstances. The video evidence does not contradict these allegations. Thus, Plaintiff has satisfied the first prong to overcome qualified immunity.

Still, Plaintiff must have also pleaded sufficient facts to invoke bystander liability as to the remaining Defendants. Bystander officers are "liable for failure to intervene when that officer: (1) knew a fellow officer was violating an individual's constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm but nevertheless, (4) chose not to act." *Joseph ex rel. Joseph v. Bartlett*, 981 F.3d 319, 343 (5th Cir. 2020).

The factual allegations showing that Rodgers plausibly violated McWashington's rights sufficiently allege that the bystander officers knew that Rodgers was violating Plaintiff's rights. The pleadings contend that the movants saw what Rodgers saw. Defendants had been on the scene for at least as long as Rodgers and watched without intervention as he allowed Rico to continuously bite Plaintiff even though McWashington was not actively resisting. No one, for example, told Rodgers not to use the dog or to order the dog to release McWashington sooner. Thus, the allegations pleaded in the Complaint plausibly state a claim for bystander liability against Defendants Garza, Hinojosa, Khalid, Ruiz, Salazar, Solis and Trevino. The video supplied by Defendants does not contradict these allegations.

Moving on to the second prong, the Court considers whether the right was clearly established at the time of the violation. "To answer that question in the affirmative, we must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (en banc) (internal quotation marks and citation omitted). But "this does not mean that 'a case directly on point' is required." *Id.* at 372 (quoting *al–Kidd*, 563 U.S. at 741). Rather, "existing precedent must have placed the statutory or constitutional question *beyond debate*." *Id.* The central concept is "fair warning." *Id.* "The law can be clearly established

despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012).

The law is clear that the degree of force an officer can reasonably employ is reduced when the individual is not combative or actively resisting. *See Darden v. City of Fort Worth*, Texas, 880 F.3d 722, 733 (5th Cir. 2018); *Cooper*, 844 F.3d at 524. The Fifth Circuit has already explicitly held that an officer has "fair warning that subjecting a compliant and non-threatening arrestee to a lengthy dog attack was objectively unreasonable." *Cooper*, 844 F.3d at 525 (quotations omitted). The facts pleaded, and corroborated by the body camera footage, are sufficient to warrant a denial of qualified immunity at this stage because a reasonable officer would have known that the degree of force used was unconstitutionally excessive under the circumstances.

When considering a Rule 12(b)(6) Motion to Dismiss, the Court must presume that the allegations within a plaintiff's complaint are true. Taken in light most favorable to Plaintiff, he has sufficiently pleaded that the Officers violated a constitutional right, and that this right was clearly established at the time of the challenged conduct. Therefore, at this stage, McWashington has successfully rebutted the Defendants' entitlement to qualified immunity on this aspect of Plaintiff's claims. Thus, the Court denies the motions to dismiss the claims against the bystander officers at this time with respect to count three.

ii.   *Excessive Force – Lethal Weapon Claim (Counts 2 and 4)*

While the majority of each motion focuses on the use of the K9, Defendants have also moved to dismiss counts two and four.[4] Plaintiff's second claim is brought against Defendant Solis

---

[4] The Court notes that Defendants' initial motion to dismiss (Doc. No. 10) is woefully lacking in factual analysis. The large majority of the motion consists of quotes from Fifth Circuit case law and lacks any analysis based on the contentions in this case. Instead, after paragraphs of case law (some not even relevant to the issues at hand), Defendants

only, for "quickly and unjustifiably unholstering and pointing his lethal duty weapon at" Plaintiff. His fourth cause of action is brought against Defendants Curtis, Hinojosa, Khalid, Ruiz, Salazar, and Trevino for "quickly and unjustifiably unholstering and pointing their lethal duty weapons at" Plaintiff. Plaintiff alleges that each count amounts to excessive force that violates his Constitutional rights. Unlike the alleged bystander liability discussed above, Plaintiff now alleges that each officer directly violated his Constitutional rights independently.

Plaintiff asserts that Defendants unholstered their weapons and aimed them at him without "a reasonable basis to believe this level of force was warranted." (Doc. No. 4 at 23). Plaintiff contends that the officers should have approached him to assess his level of impairment, seized him while he lay on the ground, or continued verbal negotiations. Instead, "Defendants escalated the encounter when [Plaintiff] was suspected of a nonviolent traffic offense, was non-threatening, and at best passively-resisting [sic] and posing no risk of escape." (*Id.*).

Again, to sufficiently plead an excessive force claim, Plaintiff must establish an injury that resulted directly and only from a use of force that was clearly excessive. *Graham*, 490 U.S. at 396. Unlike the longevity of the dog encounter, Plaintiff fails to allege any injury caused by this show of force. *See Ratliff*, 948 F.3d at 287. Plaintiff pleads only that his forearm and hand have nerve damage as a result of the dog bite and he is now afraid to be around dogs. McWashington does not plead any injury as a result of Defendants' pointing their weapons at him.

Nevertheless, even if he did state a plausible claim for psychological injuries, Defendants are entitled to qualified immunity for these two claims. As earlier noted, to determine whether the excessiveness was clearly unreasonable, courts must examine the severity of the crime at issue, whether the suspect posed a threat to the safety of the officers or others, and whether the suspect

---

merely make the conclusion that Plaintiff has not pleaded sufficient facts to overcome qualified immunity. To be charitable, the briefing in this regard is somewhat lacking.

actively resisted arrest or attempted to evade arrest. *Graham*, 490 U.S. at 396. As earlier noted, Defendants pointed firearms at McWashington for varied periods of time, all the while Plaintiff wholly failed or was reluctant or slow to comply with the officers' orders.

The Fifth Circuit has previously held that pointing a gun can be reasonable given the circumstances. *Crane v. City of Arlington, Tex.*, No. 21-10644, 2022 WL 4592035, at *10 (5th Cir. Sept. 30, 2022) (citing *Hinojosa v. City of Terrell, Tex.*, 834 F.2d 1223, 1230–31 (5th Cir. 1988)). As previously noted, Plaintiff was suspected of a DUI, a serious offense. The remaining *Graham* elements similarly weigh in favor of the officers. As for element two, any reasonable officer could believe that this situation created a threat to the officer's safety. First, Plaintiff did not immediately stop. Instead, he traveled for some distance and then pulled over onto what appears to be a dark street. Moreover, this incident occurred at night, and the windows of Plaintiff's car appear to have a very dark tint. In fact, the combination of the scene and windows being so dark seemingly led Officer Solis to instruct the officers not to approach because they could not tell how many people were actually in the vehicle. Further, despite orders to the contrary, Plaintiff did not get out of the car for a prolonged period of time. During this time, the officers could not continuously observe Plaintiff's hands as he repeatedly moved his body back into the vehicle. Though Officer Solis shouted at Plaintiff to "stop reaching," Plaintiff did not obey this order either. His failure to comply with the most basic orders would arouse the suspicion of even the most constitutionally grounded officer.

With respect to element three, McWashington actively resisted arrest by not stepping out of the vehicle as commanded and repeatedly closing his door. As noted above, the Court must assess the facts and circumstances "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Plaintiff contends that he was

not resisting arrest, but merely confused by the allegedly conflicting commands and simply closed his door due to fear of being shot or attacked by the K9. While that may be true, it does not affect whether the officers acted reasonably. Plaintiff suggests that the officers should have recognized that he was impaired and approached his vehicle to offer their help instead of drawing their weapons. Nevertheless, when an officer is required to approach an uncooperative, impaired person sitting in a vehicle that holds an unknown number of people, let alone at night, a reasonable officer's apprehension and concern for his safety would be greatly heightened. Based on the three *Graham* factors, it cannot be said that the officers acted unreasonably in drawing their weapons and pointing them at Plaintiff until he was secured by handcuffs.

Since the officers' use of force was not clearly unreasonable, Defendants did not violate Plaintiff's Fourth Amendment right. Thus, Plaintiff has failed to rebut Defendants' entitlement to qualified immunity, and the Court need not address the second prong of the qualified immunity analysis. Defendants are granted qualified immunity on the claims made in Plaintiff's second and fourth counts that concern the use of their service weapons.

## IV.    Conclusion

For the reasons above, the Court GRANTS IN PART and DENIES IN PART the pending motions to dismiss. (Doc. Nos. 10, 28, 31, and 39). The allegations in Counts two and four are dismissed due to the officers' qualified immunity. The motions to dismiss are denied as to Count three concerning possible bystander liability related to the use of the K9.

SIGNED at this _12_ day of April, 2025.

Andrew S. Hanen
United States District Judge

21