# EXHIBIT 1

# UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| BRANDON MCWASHINGTON, | |
| Plaintiff | Case No. 4:24-cv-02153 |
| v. | **JURY DEMAND** |
| JOSEPH P. RODGERS II, BRIAN G. CURTIS, NOE GARZA, MELISSA A. HINOJOSA, KHALID H. KHALID, JOSUE D. RUIZ, MANUEL A. SALAZAR, WARNER A. SOLIS, AND RODOLFO A. TREVINO JR., | |
| Defendants. | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO LIMIT DISCOVERY TO QUALIFIED IMMUNITY AND FOR PROTECTIVE ORDER UNDER FED. R. CIV. P. 26(C)**

## TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................... 2

INTRODUCTION ................................................................................. 3

NATURE AND STAGE OF THE PROCEEDING ................................. 4

    I. It has been nearly four years since Defendants attacked Mr. McWashington with a police dog and violated his Fourth Amendment right to be free from excessive force. .......... 4

    II. This Court relied on its own review of comprehensive body camera footage of the Incident when it denied Defendants' bid for qualified immunity at the motion to dismiss stage over a year ago. ................................................ 5

ARGUMENT ........................................................................................ 6

    I. Limited discovery is warranted when a district court concludes it cannot rule on qualified immunity without further factual development. Because this Court concluded it had sufficient information to rule when it reviewed comprehensive bodycam footage and denied qualified immunity over a year ago, Defendants' Motion must be denied. .......... 6

        A. The Fifth Circuit ordered limited discovery in *Asante-Chioke v. Dowdle* because the district court denied qualified immunity based solely on the pleadings—with no corroborating evidence—and did so despite Defendants' contemporaneous request to explore material factual gaps in discovery prior to any immunity ruling. .......... 7

        B. Courts interpreting *Asante-Chioke* agree that a clear need for further factual development at the motion to dismiss stage is what warrants limited discovery. .......... 9

        C. *Craft v. Parish of Jeff Davis* does dictate that discovery be limited in this case because, unlike in *Craft*, this court has already tested and validated the sufficiency of Mr. Mcwashington's Amended Complaint and ruled on qualified immunity. .......... 11

        D. *Mitchell v. Forsyth* and *Carswell v. Camp* do not shield Defendants from discovery where qualified immunity has already been denied. .......... 12

    II. Limiting discovery will result in inefficiency, extensive court involvement, further delay, and prejudice to Mr. McWashington. .......... 13

        A. With discovery limited to "qualified immunity," disputes between the parties will not cease, but proliferate. .......... 13

        B. With discovery limited to "qualified immunity," Mr. McWashington will be forced to litigate this case twice. .......... 15

        C. The delay inherent in bifurcated discovery will prejudice Mr. McWashington, who was mauled by a police K9 approximately four years ago. .......... 16

    III. This Court has followed the careful procedures set forth in Fifth Circuit precedent, dispensing with Defendants' threat to appeal under the collateral order doctrine. .......... 18

CONCLUSION ..................................................................................... 20

CERTIFICATE OF SERVICE ............................................................. 21

**INTRODUCTION**

On May 11, 2026, more than a year after this Court denied Defendants' bid for qualified immunity at the motion to dismiss stage; nine months after the parties exchanged Initial Disclosures; and six months after Plaintiff Brandon McWashington ("Plaintiff" or "Mr. McWashington") sent Requests for Production ("RFPs") to Defendants,[1] Defendants filed a Motion to Limit Discovery to Qualified Immunity and for Protective Order Under Fed. R. Civ. P. 26(c) ("Motion"). *See* Doc. 48, Doc. 93.

This Court granted Defendants' Motion four days later, on May 15, 2026, without hearing from Mr. McWashington. *See* Doc. 95. Plaintiff now files this opposition along with his Motion for Reconsideration of the Court's May 15, 2026, Order, *see* Doc. 96, seeking the opportunity to be heard on the issue for the first time.

Plaintiff respectfully requests that this Court reconsider its May 15, 2025, Order and deny Defendants' Motion. Limited discovery is efficient and appropriate where the court needs additional information to rule on qualified immunity, not where the court has already reviewed comprehensive footage of the incident in question and denied Defendants' qualified immunity defense, as this Court did here over a year ago. *Cf. Asante-Chioke v. Dowdle*, 103 F.4th 1126, 1130 (5th Cir. 2024) (ordering limited discovery where defendants immediately moved for this relief and where the district court's denial of qualified immunity turned solely on pleadings that defendants and the court agreed had numerous, material factual gaps).

Moreover, because the parties disagree about and cannot fully anticipate what the Court will deem relevant to qualified immunity, navigation of a limitation order will require the parties

---

[1] On February 9, 2026, Plaintiff sought the Court's assistance in procuring sufficient responses to his RFPs, pursuant to Section 8(A) of Judge Hanen's Civil Procedures. The Court scheduled a discovery conference on the matter on March 11, 2026.

to seek extensive court involvement in every mechanism of discovery. These disputes, combined with the double work inherent in bifurcated discovery (pre- and post-summary judgment) will result in further delay, causing great prejudice to Mr. McWashington, whose rights were violated almost four years ago. *See* Doc. 48.

Because this Court can deny Defendant's motion while still following *Zapata's* "careful procedure," Defendants' threat to appeal under the collateral order doctrine is groundless. *See Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014). This is evidenced by Defendants' failure to identify a case where a motion to limit discovery was granted a year after the denial of qualified immunity, and almost a year into the discovery process. For these reasons, the Court should reconsider its May 15, 2025, Order and deny Defendants' Motion to Limit Discovery.

### <u>NATURE AND STAGE OF THE PROCEEDING</u>

**I.    It has been nearly four years since Defendants attacked Mr. McWashington with a police dog and violated his Fourth Amendment right to be free from excessive force.**

On June 7, 2022, despite numerous opportunities to detain Mr. McWashington without violence, Defendants permitted K9 Rico—a police dog who had attacked two people within the previous 24 hours without being commanded to do so—to attack Mr. McWashington. Doc. 4. What started as a DWI traffic stop resulted in a brutal mauling that has left Mr. McWashington with lasting injuries. *See id*. Plaintiff filed suit against the Defendants on June 6, 2024, Doc. 1, alleging, in relevant part, that Defendant Rodgers violated his Fourth Amendment right to be free from excessive force by siccing his police K9 on him (Count I); and Defendants Garza, Hinojosa, Khalis, Ruiz, Salazar, Solis, and Trevino ("Bystander Defendants") violated his Fourth Amendment right to be free from excessive force by failing to intervene or protect him from an unjustifiable K9 attack (Count III).  Doc. 4.

**II.    This Court relied on its own review of comprehensive body camera footage of the Incident when it denied Defendants' bid for qualified immunity at the motion to dismiss stage over a year ago.**

On July 22, 2024, all Defendants but Defendant Rodgers filed a Motion to Dismiss Plaintiff's Amended Complaint, raising the defense of qualified immunity. *See* Doc. 10; *see also* Docs. 28, 31, 39.

On April 15, 2025, based upon its own review of the bodyworn camera footage,[2] this Court denied qualified immunity as to Defendants' use of—and failure to intervene in—K9 force. Doc. 48.[3] This Court noted that "Defendant Rodgers allowed the dog to thrash at Plaintiff's arm for roughly thirty seconds; all the while, Plaintiff remained still and silent with nothing visibly in his hands." *Id.* at 14.[4]    Accordingly, based on the Amended Complaint and the bodyworn camera footage, this Court determined that sufficient facts existed to support a constitutional violation:

> Taking the facts in the light most favorable to Plaintiff, Plaintiff has pleaded sufficient facts to suggest that Defendant Rodgers violated Plaintiff's Fourth Amendment rights because the *degree* of force Rodgers used in this case was not justifiable under the circumstances. The video evidence does not contradict these allegations. Thus, Plaintiff has satisfied the first prong to overcome qualified immunity.

*Id.* at 16.

---

[2] The Court relied on its own review of the bodyworn camera footage in ruling on Defendants' Motions to Dismiss. *See, e.g.* Doc. 48 at 15 ("Here, the Complaint alleges and the body camera footage does not contradict the claim that McWashington was not 'actively resisting'") (citations omitted); *see id.* at 16 ("Plaintiff also pleaded, and the body cam video supports the claim, that McWashington did not move nor make any sound as the K9 bit his arm. Thus, this Court cannot hold as a matter of law that his behavior amounted to 'active resistance'") (citations omitted).

[3] Because "the motions to dismiss involve[d] similar arguments," this Court addressed them together in a single order. Furthermore, this Court determined that despite Defendant Rodgers' failure to appear in the case, it needed to evaluate his entitlement to qualified immunity in order to reach the remaining Defendants' arguments.

[4] The Court also noted that: "Plaintiff …alleged that Rodgers decided to utilize the K9 despite the fact that he knew that Rico could not be controlled. Plaintiff alleges that Rico attacked a citizen less than 24 hours prior to the [I]ncident in question without his handler issuing an order to do so, and that Rico also bit Officer Curtis just a few seconds before Defendant Rodgers deployed the K9 on McWashington." *Id.* at 16 (citing Doc. 4 at 11).

Further, this Court ruled against Defendant Rodgers on the "clearly established" prong of qualified immunity analysis, noting that "the Fifth Circuit has already explicitly held that an officer has 'fair warning that subjecting a compliant and non-threatening arrestee to a lengthy dog attack [i]s unreasonable.'" *Id.* at 18 (quoting *Cooper v. Brown,* 844 F.3d 517, 525 (5th Cir. 2016)).

This Court then determined that Bystander Defendants were not entitled to qualified immunity because Mr. McWashington had "sufficiently allege[d] that the bystander officers knew that Rodgers was violating Plaintiff's rights":

> Taken in light most favorable to Plaintiff, he has sufficiently pleaded that the Officers violated a constitutional right, and that this right was clearly established at the time of the challenged conduct. Therefore, at this stage, McWashington has successfully rebutted the Defendants' entitlement to qualified immunity on this aspect of Plaintiff's claims.

*Id.* at 18.

## **ARGUMENT**

I. **Limited discovery is warranted when a district court concludes it cannot rule on qualified immunity without further factual development. Because this Court concluded it had sufficient information to rule when it reviewed comprehensive bodycam footage and denied qualified immunity over a year ago, Defendants' Motion must be denied.**

Defendants concede that it is only when a district court "c*annot rule on qualified immunity without further factual development*," that discovery should be limited. Mot. at 3 (quoting *Asante-Chioke v. Dowdle,* 103 F.4th 1126, 1130 (5th Cir. 2024) (emphasis added)); *see also Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014) ("'[I]f the court *remains unable to rule on the immunity defense without further clarification of the facts*, it may issue a discovery order narrowly tailored to uncover only those facts needed to rule on the immunity claim" (cleaned up)).

And yet, Defendants have identified no "further factual development" necessary for fulsome qualified immunity analysis, because there is none. Rather than relying on Plaintiff's

pleadings alone, this Court reviewed comprehensive body camera footage of the incident before denying Defendants qualified immunity. Had Defendants felt immunity could not be ruled on "without further clarification of the facts" they could have moved for limited discovery alongside their motion to dismiss. They chose not to do so.

Despite these facts, Defendants erroneously claim that *Asante-Chioke v. Dowdle* and *Craft v. Parish of Jeff Davis* require this Court to limit discovery simply because they pleaded qualified immunity in their motions to dismiss. Mot. at 2-4. (citing 103 F.4th at 1130-31; 2025 WL 971740, at *2 (W.D. La. Mar. 31 2025)). That is not the state of the law in this circuit.

**A. The Fifth Circuit ordered limited discovery in *Asante-Chioke v. Dowdle* because the district court denied qualified immunity based solely on the pleadings—with no corroborating evidence—and did so despite Defendants' contemporaneous request to explore material factual gaps in discovery prior to any immunity ruling.**

The Fifth Circuit's holdings in *Asante-Chioke* were driven by facts and procedural history that are materially distinct from this case. 103 F.4th at 1127-32. In *Asante-Chioke,* four officers fired 36 rounds of shots at Mr. Jabari Asante-Chioke while he experienced a mental health crisis. *Id.* at 1128-31. Mr. Asante-Chioke's daughter filed an unlawful seizure and excessive force lawsuit against the officers involved, including Defendant Nicholas Dowdle, but the Complaint contained no information about the duration of the shooting, whether Defendant Dowdle actually fired shots, or what was visible to the officers on the scene at the time they fired.[5] *Id.* at 1131; *see also* Ex. 1, Original Br. on Behalf of Def. Appellants at 8.

Defendants Dowdle and Davis moved to dismiss and, in the alternative, moved for limited discovery focused on the factual gaps bearing on Defendant Dowdle's entitlement to qualified immunity. 103 F. 4th at 1128. Despite there being numerous unknown facts material to the district

---

[5] Although the complaint referenced a video that had been circulating on social media, this video was not reviewed by the district court. Ex. 1, Original Br. on Behalf of Def. Appellants at 9, 21

court's initial qualified immunity determination, the court denied defendants' motion to dismiss and their alternate request for limited discovery. *Id.* Defendants then appealed, arguing that the district court erred in rejecting limited discovery "based solely and entirely off of the pleadings" and without "review of any facts, evidence, or available video." Ex. 1, Original Br. on Behalf of Def. Appellants at 9, 21. Further, Defendants identified three discrete factual issues requiring investigation before qualified immunity could be denied "once and for all":

> 1.) whether the individual officers continued shooting after it was apparent from their perspective that Chioke was clearly incapacitated under the circumstances;
>
> 2.) whether there was any second round of shooting initiated by any of the officers after the initial response to the threat posed by Mr. Asante-Chioke and after he was incapacitated, as discussed by the district court; and
>
> 3.) whether there was any perceived continued threat to a reasonable officer supporting the officers' actions under the circumstances.

*Id.* at 18, 21.

It was against this backdrop that the Fifth Circuit directed the district court to order limited discovery: 1) Plaintiff's pleadings had factual gaps and were uncorroborated by other evidence; 2) Defendants moved for limited discovery alongside their motion to dismiss; and 3) Defendants identified three material factual gaps that needed to be filled before qualified immunity could be resolved. *See* 103 F. 4th at 1131.

The Fifth Circuit highlighted that although "the defense of qualified immunity turn[ed] on whether [Defendant] Dowdle continued using deadly force by firing shots at Asante-Chioke after he became incapacitated," the factual record had not been developed enough for the court to make such determination. *Id.* Further, because "there were multiple alleged shooters from at least two different law enforcement agencies," and almost forty rounds of shots were fired, any of the officers present on the scene could have been held responsible for the use of excessive force. *See*

*id.* The Fifth Circuit emphasized:

> On the present record, it is not known whether Dowdle fired *any* shots; how many if so; and when, in relation to Asante-Chioke's actions and death. Through limited discovery, this information may well be discernable.

*Id.* (emphasis added).

Here, in contrast, this Court reviewed Mr. McWashington's pleadings *and* comprehensive bodyworn camera footage, and determined that no further factual development was necessary to enable a ruling:

> [T]he facts pleaded, and corroborated by the body camera footage, are sufficient to warrant a denial of qualified immunity at this stage because a reasonable officer would have known that the degree of force used was unconstitutionally excessive under the circumstances.

Doc. 48 at 18.

Furthermore, Defendants did not and have not identified any specific factual issues or gaps preventing fulsome analysis. Accordingly, if Mr. McWashington is blocked from accessing any additional information in discovery, as Defendants desire, the next round of qualified immunity briefing at the summary judgment stage will be identical to the last.

Because Defendants did not move for limited discovery at the motion to dismiss stage, because this Court did not rely on Plaintiff's pleadings alone in analyzing qualified immunity, and because there is no need for additional factual development here, *Asante-Chioke* does not dictate that discovery be limited in this case. 103 F. 4th at 1131.

**B. Courts interpreting *Asante-Chioke* agree that a clear need for further factual development at the motion to dismiss stage is what warrants limited discovery.**
A review of in circuit case law interpreting *Asante-Chioke* and its predecessors makes clear that a court's inability to rule on the immunity defense without further clarification of the facts is what controls. *See Walter v. City of New Orleans,* No. CV 23-4352, 2025 WL 1697150, at *9-11 (E.D. La. June 17, 2025) (citing *Asante-Chioke*, 103 F. 4th at 1126); *Tippit v. Iverson,* No. 6:23-

CV-00515-JDK, 2024 WL 3153351,at *2 (E.D. Tex. June 24, 2024) (citing *Asante-Chioke*, 103 F. 4th at 1126).

Citing *Backe v. LeBlanc,*[6] *Lion Boulous v. Wilson*,[7] and *Asante-Chioke,*[8] a sister court held in *Walter* that:

> If a court *remains unable to rule on the immunity defense without further clarification of the facts*, it may issue a discovery order narrowly tailored to uncover only those facts needed to rule on the immunity claim. The purpose is only to allow the district court to rule on the defendant's assertion of QI.

2025 WL 1697150, at *8 (citations omitted). Accordingly, the *Walter* court determined that, in order to rule on qualified immunity, limited discovery was necessary to develop the factual record regarding the defendant's role in processing and suppressing evidence that could have prevented plaintiff's wrongful incarceration. *Id.* at *9.

Similarly, in *Tippit*, a sister court held that it is "where resolution of [qualified immunity] turns on disputed facts and the court requires further clarification to resolve those factual disputes," that limited discovery should be ordered. *Tippitt v. Iversen*, 2024 WL 3153351, at *2 (E.D. Tex. June 24, 2024) (citing *Lion Boulos*, 834 F.2d 504 (5th Cir. 1987)). Accordingly, the *Tippit* court determined that, before qualified immunity could be resolved, limited discovery was necessary to resolve a dispute between the parties about whether plaintiff was armed or merely carrying drug paraphernalia—a matter bearing directly on the reasonableness of the defendant's force. *Id.* at *2 (citing *Asante-Chioke,* 103 F.4th at 1126).

In contrast, where a court determines it has sufficient evidence to rule on and deny qualified immunity, the need to limit discovery dissipates. This is evidenced by *Secherest v. City of*

---

[6] 691 F. 3d 645, 648 (5th Cir. 2012).
[7] 834 F. 2d 504, 508-09 (5th Cir. 1987).
[8] 103 F. 4th at 1126.

*Lexington,* where the court evaluated the propriety of limiting discovery to qualified immunity after it had already denied the defendants' bid for qualified immunity. *See* 3:34-cv-00034-TSL-MTP (S.D. Miss. Apr. 7, 2026). Citing *Williams v. Biggs*, No. CV 21-333, 2022 WL 834781, at *3 (E.D. La. Mar. 21, 2022), plaintiffs argued that where "the [c]ourt has already denied [qualified immunity] and no appeal was noticed—that defendant stands in the same position as any other civil litigant, entitled to neither the protections the doctrine affords nor the discovery shield that attaches to its invocation." Pls' Mem. P. & A. in Supp. of Mot. to Partially Lift Stay of Disc. at 15. The court agreed, granting the plaintiffs' motion not only because the action had been pending longer than two years, but also because "the [c]ourt ha[d already] adjudicated the immunity issues." *Secherest*, No. 3:34-cv-00034-TSL-MTP, slip op. at 2.

**C.** ***Craft v. Parish of Jeff Davi*s does dictate that discovery be limited in this case because, unlike in *Craft,* this court has already tested and validated the sufficiency of Mr. Mcwashington's Amended Complaint and ruled on qualified immunity.**

The District Court's opinion in *Craft v. Parish of Jeff Davis* was also driven by facts and procedural history that are materially distinct from this case. No. 2:20-CV-00853, 2025 WL 971740, at *2 (W.D. La. Mar. 31, 2025); *see* Mot. at 3 (citing *Craft*). In *Craft,* the court narrowed discovery to qualified immunity prior to summary judgment because it had not previously issued a ruling on qualified immunity at the motion to dismiss stage of the case. 2025 WL 971740, at *2 ("Defendants did not test the sufficiency of plaintiff's Complaint via motion to dismiss."). Accordingly, *Craft* stands for the uncontroversial premise that when defendants decline to test the sufficiency of a plaintiff's complaint via motion to dismiss, it may be "appropriate to limit discovery to the issue of qualified immunity so that qualified immunity can be addressed as expeditiously as possible via summary judgment." *Id.* Here, in contrast, Defendants' *did* raise qualified immunity and "test the sufficiency of plaintiff's Complaint via motion[s] to dismiss,"

and their motions were denied. *Compare Craft*, 2025 WL 971740, at \*2 *with* Doc. 48. They could have appealed this Court's order within the required timeframe, but chose not to do so. Now, Defendants seek a third bite at the apple over a year later.

**D. *Mitchell v. Forsyth* and *Carswell v. Camp* do not shield Defendants from discovery where qualified immunity has already been denied.**

Relying on *Mitchell v. Forsyth* and *Carswell v. Camp*, Defendants claim that broader discovery would force them to endure the same burdens of pretrial discovery that qualified immunity is designed to prevent. *See generally* Mot. (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Carswell v. Camp*, 54 F.4th 307, 310 (5th Cir. 2022)).

In reality, neither *Mitchell* nor *Carswell* stand for the proposition that Section 1983 defendants are protected from suit and pretrial discovery even after qualified immunity has been denied.  *See generally* 472 U.S. at 511-527; 54 F.4th at 309-14. In *Mitchell,* the court explained that a "*unless the plaintiff's allegations state a claim of clearly established law,* a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." 472 U.S. at 526 (emphasis added). Similarly, "*Carswell* stands for the general proposition that a court may not permit discovery against the immunity-asserting defendants *before it rules on their defense.*" *Majors v. City of Canton, Mississippi,* No. 25-60148, 2025 WL 3755537, at \*1 (5th Cir. Dec. 29, 2025) (citing *Carswell*, 54 F.4th at 311) (emphasis added). Here, this Court already determined that Plaintiff's Complaint was sufficient to overcome Defendants' qualified immunity defense. *See* Doc. 48. Accordingly, Defendants are not protected from suit or pretrial discovery.

Discovery is the default mechanism by which parties engage in litigation, and the law presumes that litigants are entitled to it. *See Ruiz v. Fiesta Mart, L.L.C.,* No. 22-20489, 2023 WL 5031489, at \*2 (5th Cir. Aug. 7, 2023) ("[T]he rules start with the presumption that parties will at least be given an opportunity to conduct discovery."); *U.S. ex rel Magee v. Lockheed Martin Corp.*,

No. 1:09CV324-HS)-JMR, 2010 WL 2816658, at *3 (S.D. Miss. July 16, 2010) (noting the "strong presumption in favor of discovery") (citing *United States v. Gieger Transfer Serv.,* 174 F.R.D. 382, 385 (S.D. Miss. 1997)). Defendants' failed bid for qualified immunity cannot override this presumption.

Additionally, Defendants' claim of burden ignores the fact that they have been participating in discovery for almost a year. If Defendants thought discovery should be limited in this case for the purpose of deciding issues of qualified immunity, they should have raised that argument at the motion to dismiss phase, and before this Court made its determination on qualified immunity, over a year ago. They did not. The time for Defendants' Motion expired long ago.

## II. Limiting discovery will result in inefficiency, extensive court involvement, further delay, and prejudice to Mr. McWashington.

Because the parties have contrasting views about what is relevant to qualified immunity and what is not, this Court will be called upon to referee each interrogatory, request for production, request for admission, and deposition ahead. These disputes, combined with the delays inherent in bifurcated discovery (pre- and post-summary judgment), will create needless inefficiencies and prejudice that can and should be avoided by allowing discovery to proceed in the normal course.

### A. With discovery limited to "qualified immunity," disputes between the parties will not cease, but proliferate.

The record makes clear that the parties do not agree about which records are relevant to qualified immunity or Plaintiff's claims more broadly. In Plaintiff's view, Fifth Circuit law establishes that *all* records bearing on: 1) what happened to Mr. McWashington the night that he was mauled; and 2) whether the force he suffered was reasonable, are squarely relevant to qualified immunity.[9] *See Tennessee v. Garner,* 471 U.S. 1, 8 (1985) ("[W]hether the force used to effect a

---

[9] *See, e.g., Hope v. Pelzer*, 536 U.S. 730 (2002) (denying defendants' bid for qualified immunity where department policy put them on notice of the constitutional infirmity of handcuffing plaintiff

particular seizure is reasonable under the Fourth Amendment requires careful attention to the circumstances of each particular case") (cleaned up)).

Of course, Defendants disagree, claiming that HPD policies, K9 Rico's training and performance records, and Defendants' misconduct and performance records have no bearing on whether they violated Plaintiff's clearly established rights, *see* Mot. at 2-3. Defendants maintain this position despite Plaintiff citing ample case law establishing otherwise.[10] As Plaintiff has explained, these records will help Plaintiff determine whether K9 Rico's behavior during the Incident was the result of Defendant Rodgers' actions, K9 Rico's training or lack thereof, or K9 Rico's pre-existing performance and aggression issues. The same is true of Defendant's misconduct and performance records.[11]

*Even after* this Court intervened and supported Plaintiff's efforts to obtain these records, *see* Doc. 79, Defendants have continued arguing against disclosure, explicitly taking the position that these records are irrelevant to qualified immunity. *See* Doc. 84 at 4 ("Defendants have already produced body-worn footage and offense reports. Broader requests for HPD-wide policies or unrelated incidents do not bear on whether Defendants violated clearly established law in this specific event."); *see also* Mot. at 3 ("Department-wide policies . . .full personnel and IA files, and K9 behavioral/veterinary records have no relevance to whether these individual Defendants violated clearly established law in this single event."); *see id.* ("Policies, customs, training

---

to a hitching post); *Cruz v. Cervantez*, 96 F.4th 806, 814 (5th Cir. 2024) (demonstrating that department policies are relevant to both Section 1983 cases and the qualified immunity analysis because failure to follow them may be objectively unreasonable)..

[10] *See supra* n. 9.

[11] *See Carnaby v. City of Houston*, No. 4:08-cv-1366, 2008 WL 4546606, at *3 (S.D. Tex. Oct. 10, 2008) ("IAD and personnel files are highly relevant to the [Section 1983] case at hand."); *Betzer v. Stephens*, 2003 WL 22175993 (E.D.La. Sept. 19, 2003) (demonstrating that defendant officers' personnel and IAD records are within the scope of Fed. R. Civ. P. 26 and bear on the reasonability of their conduct in police abuse cases).

materials, departmental statistics, prior incidents, and internal investigations are irrelevant to the threshold immunity question.").

With discovery limited to "qualified immunity," these disputes will not cease, but proliferate, even with both parties acting in good faith.

### B. With discovery limited to "qualified immunity," Mr. McWashington will be forced to litigate this case twice.

Limiting discovery to qualified immunity a year into this process will force the parties to litigate the case twice, with some as-yet undefined universe of records and information being exchanged now, and all other inquiries (related to punitive damages, ability to pay, credibility, motive, intent, absence of mistake, and the like) being revisited again—with the *same* parties, records custodians, and deponents—after summary judgment. This inefficiency will be most painful and pronounced during depositions, which will all need to be conducted twice, requiring double the expense, scheduling, and court involvement to assist the parties in determining what, precisely, is within scope. This is unnecessarily burdensome. *See Carswell v. Camp,* 54 F.4th 307, 314 (5th Cir. 2022) ("It only exacerbates the burdens of litigation to make a defendant sit for two depositions instead of one.").

At minimum, Plaintiff's investigation into whether a clearly established constitutional violation occurred will overlap with his investigation of Defendants' motive, intent, absence of mistake, and the like. *Comp. Hornback v. Czartorski,* 2022 WL 4279725, at *4 (W.D. Ky. Sept. 15, 2022) (demonstrating that an examination of an officer's prior uses of force can be used to determine his motive, intent, and absence of mistake) *with Davis v. Ramos*, No. SA-10-CA-557-XR, 2011 WL 3607017, at *7 (W.D. Tex. Aug. 12, 2011) (illustrating that an officer's use of force reports may inform reasonableness analysis). District courts in this circuit have found such bifurcation to be inefficient. *See, e.g., In re: Diamond B. Marine Services, Inc.,* No. 99-1346, 2000

WL 37987, at *2 (E.D. La. Jan. 14, 2000) (denying the plaintiff's motion to bifurcate the trial after determining that "quite a bit of evidence" would "overlap with regard to the issues of damages, causation, and liability"); *Matter of Martin Marietta Materials* for this exact reason. 2011 WL 13213554, at *2 (E.D. La. Apr. 20, 2011) (same); *Matter of Chester J. Marine, LLC*, No. 20-214, 2021 WL 2661949, at *2 (M. D. La. June 29, 2021) (declining to limit discovery to issues of negligence and limitation of liability because to do so would "cause multiplication of proceedings, inconvenience to the parties. . .as well as the expense involved in preparing for separate proceedings").

Ultimately, conducting bifurcated discovery would be "inefficient, impractical, unnecessarily costly, and unjust." *Id.* In the interest of judicial efficiency, this Court should deny Defendants' Motion and allow discovery to proceed in the normal course.

### C. The delay inherent in bifurcated discovery will prejudice Mr. McWashington, who was mauled by a police K9 approximately four years ago.

Any further delay will prejudice Mr. McWashington, who was mauled by a police K9 at Defendants' direction approximately four years ago. *See* Doc. 4 at 1. Courts in this Circuit carefully weigh the prejudice a party may suffer as a result of discovery delays and take pains to prevent it. *See* e.g., *Alcala v. Tex. Webb Cnty.,* 625 F. Supp. 2d 391 (S.D. Tex. 2009), *McGirt v. Oklahoma*, 591 U.S. 894 (2020), *Tesla v. Louisiana Automobile Dealers Ass'n,* No. CV 22-2982, 2025 WL 744151 (E.D. La. Mar. 7, 2025), *Secherest v. City of Lexington,* 3:34-cv-00034-TSL-MTP (S.D. Miss. Apr. 7, 2026).

As discussed in *Alcala v. Tex. Webb Cnty.*, "Delay can lead to the loss of evidence and duly frustrate a Plaintiff's ability to put on an effective case. . .With the passage of time, witnesses become unavailable, memories of conversations and dates fade, and documents could be lost or destroyed." 625 F. Supp. 2d at 405; *see also McGirt v. Oklahoma*, 591 U.S. at 971 (2020) (Roberts,

J., dissenting) (explaining that the odds of successfully bringing a claim "are hampered by the passage of time, stale evidence, fading memories, and dead witnesses"). Here, Defendants are public officers who interact with thousands of civilians annually. Mr. McWashington deserves the opportunity to depose Defendants about the full scope of this incident and their understanding of their responsibilities when their memories are close to the surface and intact.

In *Tesla v. Louisiana Automobile Dealers Ass'n,* the court emphasized that "a stay of discovery is not appropriate when it could prevent a party from having a sufficient opportunity to develop a factual basis to defend against the dispositive motion." 2025 WL 744151 at *4. Here, the delay inherent in bifurcated discovery increases the risk of spoliation. HPD has already claimed that producing records in response to Plaintiff's original subpoena would be unduly burdensome in that it would require "historical, multi-year ESI searches across disparate HPD systems (records management, training platforms, internal affairs databases, K-9 unit records, video repositories, and email)." Doc. 83 at 7. This purported burden will only heighten with the passage of time.

Furthermore, if Mr. McWashington is forced to defend against Defendants' forthcoming dispositive motions with little more than the body camera footage he already has, Defendants' will gain an unfair advantage. They will no doubt rely on all of their internal records, reports, notes, policies, and procedures to defend their conduct, while Mr. McWashington will be forced to operate on supposition and best guesses about the factual universe of this case. This is fundamentally unjust.

In the words of the *Alcala* court, "considerable time has already elapsed since the …events that gave rise to this suit took place." *Alcala,* 625 F. Supp. 2d at 405. In *Secherest v. City of Lexington*, plaintiffs moved to partially lift a stay on discovery, in part, because defendants had caused a twenty-month discovery delay creating a genuine risk of spoliation of critical evidence.

*See* 3:34-cv-00034-TSL-MTP;  Pls.' Mem. P. & A. in Supp. of Mot. to Partially Lift Stay of Disc. at 13, 15. Persuaded by plaintiffs' arguments, the *Secherest* court granted plaintiffs' motion, emphasizing that the "action ha[d] been pending for more than two years." *See Secherest*, slip op. at 2. Justice requires the same outcome here. Mr. McWashington should not be forced to wait any longer to vindicate his rights and litigate his case.

### III. This Court has followed the careful procedures set forth in Fifth Circuit precedent, dispensing with Defendants' threat to appeal under the collateral order doctrine.

Defendants threaten to appeal under the collateral order doctrine if this Court denies their Motion. *See* Mot. at 4-5. However, the collateral order doctrine does not apply where courts follow the careful qualified immunity procedure set forth by the Fifth Circuit. *See Asante-Chioke,* 103 F.4th at 1129 ("This court has jurisdiction to review discovery orders under the collateral order doctrine that *do not* follow *Zapata*'s careful procedure.") (internal citation omitted) (emphasis added); *Zapata v. Melson*, 750 F.3d at 485; *Backe v. LeBlanc,* 691 F.3d 645, 648 (5th Cir. 2012); *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 994 (5th Cir. 1995); *Lion Boulos*, 834 F.2d at 507.

This procedure is focused on the deferral of qualified immunity rulings where "further factual development is necessary to ascertain the availability of that defense." *Backe*, 691 F.3d at 648. First, a court must find "that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Wicks*, 41 F.3d at 994. Second, if the court finds that the plaintiff has pleaded such facts, but "remains unable to rule on the immunity defense without further clarification of the facts, it may issue a discovery order narrowly tailored to uncover only those facts needed to rule on the immunity claim." *Zapata*, 750 F.3d at 485 (citing *Backe*, 691 F.3d at 648). The Fifth Circuit "lacks jurisdiction to review interlocutory orders in qualified immunity cases complying with these requirements." *Backe*, 691 F.3d at 648.

Although the Fifth Circuit may review certain discovery orders under the collateral order doctrine, it may only do so under very limited circumstances: when the court "fails to find first that the plaintiff's complaint overcomes a defendant's qualified immunity defense," "when the court refuses to rule on a qualified immunity defense," or when the court's discovery order exceeds the requisite narrowly tailored scope." *Zapata*, 750 F.3d at 485 (internal citations omitted). Although the court may review an order that exceeds the "narrowly tailored" scope of discovery, such an order is only issued where qualified immunity has not yet been determined. *See Asante-Chioke*, 103 F.4th at 1131 (citing *Backe*, 691 F.3d at 648) (contemplating discovery orders issued where "the court remains unable to rule on the immunity defense without further clarification of the facts"). *Lion Boulos* is not to the contrary. There, the court contemplated immediate appeals in cases where discovery was needed "*before a ruling on the immunity defense*" or "where the defendant [was] clearly entitled to immunity." *Lion Boulos*, 834 F.2d at 507 (emphasis added).

Here, this Court "explicitly rule[d]" on Defendants' qualified immunity defense at the "earliest possible stage" of litigation. *See* Doc. 48; *see also Zapata*, 750 F.3d at 485; *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *Carswell*, 54 F.4th at 312 (emphasizing that a defendant's entitlement to immunity "should be determined at the earliest possible stage of the litigation—full stop"). Defendants did not appeal. Further, this Court made a determination that Plaintiff's allegations, combined with corroborating video evidence, defeated qualified immunity. *See* Section II, *supra*; *id*. Because this Court did not defer its ruling on qualified immunity and has already determined that Defendants are not entitled to qualified immunity, there are no outstanding questions to be resolved. *Id.* Defendants' claim that the "narrowly tailored scope" of discovery exception would apply to them on appeal is erroneous.

As such, this Court has fulfilled its duty to rule on qualified immunity before permitting

discovery to proceed. Any attempt to appeal a denial of Defendant's motion to limit discovery would be procedurally improper.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court reconsider and deny Defendants' Motion to Limit Discovery to Qualified Immunity and for Protective Order Under Fed. R. Civ. P. 26(c).

Respectfully submitted this 1st day of June, 2026.

/s/ Destiny Planter
Destiny Planter (pro hac vice)
Washington, D.C. Bar No. 1780910
destiny@peoplescounsel.org
Brittany Francis* †
Texas Bar No. 24141616;
S.D. Tex. Bar No. 3837908)
brittany@peoplescounsel.org
1900 W. Gray Street
P.O. Box 130442
Houston, TX 77219
Keisha James
Keisha.npap@nlg.org
PO Box 56386
Washington, DC 20040
(202) 557-9791
Nii Amaa Ollennu
Texas Bar No. 24098205
S.D. Tex. Bar No. 3884094*
nii@naolawfirm.com
NO Law Firm, PLLC
1216 N. Central Expy, Suite 208
McKinney, TX 75070
Telephone: (469) 620-0333
† Attorney-in-Charge

*Attorneys for Plaintiff Brandon McWashington*

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2026, a true and correct copy of this document was properly served on counsel of record via electronic filing in accordance with the United States District Court for the Southern District of Texas Procedures for Electronic Filing.

/s/ Destiny Planter

**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| BRANDON MCWASHINGTON, <br><br> Plaintiff <br><br> v. <br><br> JOSEPH P. RODGERS II, BRIAN G. CURTIS, NOE GARZA, MELISSA A. HINOJOSA, KHALID H. KHALID, JOSUE D. RUIZ, MANUEL A. SALAZAR, WARNER A. SOLIS, AND RODOLFO A. TREVINO JR., <br><br> Defendants. | Case No. 4:24-cv-02153 <br><br> **JURY DEMAND** |

**[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION**

Having considered Plaintiff's Motion for Reconsideration, filed June 1, 2026, Defendants' Opposition thereto, if any, and Plaintiff's Reply, if any, **IT IS HEREBY ORDERED that Plaintiff's Motion for Reconsideration is GRANTED.**

**IT IS SO ORDERED.**

Signed on _____, in Houston, Texas

_____

Hon. Andrew Hanen United States District Judge

# EXHIBIT 2



Cassidy Kristal-Cohen <■■■■@peoplescounsel.org>

---

## Subpoena service on HPD

---

**Cassidy Kristal-Cohen** <■■■■@peoplescounsel.org>                    Tue, Mar 10, 2026 at 11:47 AM
To: ■■■■@proactivelegal.com
Cc: Destiny Planter <■■■■@peoplescounsel.org>

Hi Adrian:

We spoke a moment ago over the phone. Attached please find the subpoena (for records) that we need served on the Houston Police Department, Records Division (1200 Travis St, Houston, TX 77002, phone #: 713 308-9120).

When possible, please provide an invoice and an estimate of when service will be attempted. If you aren't able to attempt service soon, we may update the dates on the subpoena to correspond.

Thank you,

**Cassidy Kristal-Cohen**, Lead Investigator
*she/her/hers*
**PEOPLES' COUNSEL**
■■■■@peoplescounsel.org
Phone: +1 ■■■■
www.peoplescounsel.org

---

📄 **2026_03_10 McWashington Subpoena to HPD.pdf**
1120K

# EXHIBIT 3

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  4:24-cv-2153

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*  Houston Police Dept. Custodian of Records

on *(date)*  03-10-2026.

☑ I served the subpoena by delivering a copy to the named person as follows:  Custodian of Records, Deanna Epkins

on *(date)*  03-11-2026    ; or

☐ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$

My fees are $              for travel and $              for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date:  03/11/2026

Kerry Jackson
*Server's signature*

Kerry Jackson PSC 14322 Exp 04-30-28
*Printed name and title*

772 Worthshire St. Houston, TX  77008
*Server's address*

Additional information regarding attempted service, etc.:

30257-1

# EXHIBIT 4

# PEOPLES' COUNSEL

*Every* survivor of police violence deserves an advocate.

**February 9, 2026**

Re: 4:24-cv-02153, Letter Seeking Pre-Motion Discovery Conference Due To Defendants' Woefully Deficient Production: Parties Unable to Reach an Agreement During January 29, 2026, Meet and Confer Video Conference

Dear Judge Hanen,

Pursuant to Section 8(A) of your Civil Procedures, Plaintiff seeks the Court's assistance in procuring sufficient responses to his Requests for Production of Documents ("Requests"), sent on November 10, 2025. Despite receiving 27 Requests—some containing multiple sub-parts, Defendants produced only one document each: a redacted employee complaint history "3x5." A meet-and-confer held on January 29, 2026, made clear that the parties have reached an impasse, despite Plaintiff's good-faith effort. As further outlined below, Defendants' boilerplate objections do not justify their woefully deficient production.

### A. Defendants Are Withholding Practicably Obtainable Records That Are Squarely Relevant to This Case.

Defendants have refused to produce the following records because they purportedly seek third-party discovery and/or are outside of their possession, custody, and control: HPD policies, procedures, regulations, and directives from the date of the Incident[1] to present (RFP No. 8); HPD training materials, manuals, and pamphlets (RFP No. 9); HPD use of force reports involving a K-9 and either of the Defendants (RFP No. 11); Defendants' social media posts and likes concerning K-9s (RFP No. 12); Defendants' K-9 or use of force policy violations (RFP No. 13); bite ratio information for any K-9 units used by the Defendants (RFP No. 14); statistical records of HPD K-9 deployment stats (RFP No. 15); statistical records of HPD DWI traffic stops (RFP No. 16); documents pertaining to administrative, quasi-judicial, or other proceedings related to their use of excessive force, failure to intervene, fabrication of evidence, or false arrest (RFP No. 19); training records for Defendant Rodgers and Rico (RFP No. 22); documents regarding Rico's performance (RFP No. 26); and audio/video recordings of K-9 training sessions involving Defendant Rodgers (RFP No. 27).

During the parties' meet-and-confer, as Plaintiff's Counsel addressed each file individually, Defendants' Counsel repeatedly stated that the records mentioned above belonged to the Houston Police Department. Even if that is the case, Defendants have an obligation to produce the subject records whether or not they are presently in their physical possession, so long as they have the practicable ability to obtain or reasonably access them. It does not appear that Defendants have not made any effort to obtain the subject records, despite their clear ability to access HPD records, as demonstrated by their production of Defendants' HPD employee complaint histories. These records must be produced.

### B. Defendants Rely on Inapplicable State-Level Confidentiality Statutes to Withhold Records Responsive to Half of Plaintiff's Requests.

Defendants claim that the following records are confidential under Texas law[2]: Defendants' social media posts and likes concerning K-9s (RFP No. 12); Defendants' K-9 or use of force policy violations (RFP No. 13); bite ratio information for any K-9 units used by the Defendants (RFP No. 14); statistical records of HPD K-9 deployment stats (RFP No. 15); statistical records of HPD DWI traffic stops (RFP No. 16); personnel files (RFP No. 17); documents pertaining to administrative, quasi-judicial, or other proceedings related to their use of excessive force, failure to intervene, fabrication of evidence, or false arrest (RFP No. 19); misconduct complaints (RFP No. 20); training records for Defendant Rodgers and Rico (RFP No. 22); records related to K-9 Rico's training and care (RFP No. 23); K-9 Rico's veterinary and behavioral records (RFP No. 24); HPD records regarding K-9 Rico's performance (RFP No. 25); and audio/video recordings of K-9 training sessions involving Defendant Rodgers (RFP No. 27).

It is well-settled that state statutes do not govern or control discovery in federal Section 1983 lawsuits. The Fifth Circuit established long ago that where a plaintiff asserts only claims and defenses under Section 1983, as is the case here, federal common law governs discovery and evidentiary matters as opposed to state statutory law. Defendants must produce the requested records.

---

[1] The "Incident" refers to the sequence of events that occurred on June 7, 2022, as outlined in Plaintiff's Amended Complaint.

[2] Defendants claim that the records sought in Plaintiff's RFP Nos. 12, 13, 14, 15, and 16 are "confidential by law" without referencing any specific law. In response to other RFPs, Defendants point to Texas confidentiality statutes as a basis for withholding. If Defendants are relying on those same laws here, their arguments fail for the reasons outlined above. If Defendants are relying on other laws, they must state so clearly.



**C.    Defendants Are Withholding Records Related to Insurance Policy and Risk Pool Information That They Were Required to Produce in Their Initial Disclosures.**

In RFP No. 10, Plaintiff requests documents related to insurance policies; risk pools; potential payment of legal fees, costs, settlement payments, jury awards, and/or other payments associated with this lawsuit; and any other financial arrangement that could impact the Defendants' ability to pay money damages required as a result of settlement, judgment, or other resolution. Instead of producing responsive records, Defendants directed Plaintiff to a list of publicly available HPD General Orders, none of which address the requested information. Defendants were required, by Fed. R. Civ. P. 26(a)(1)(A)(iv), to produce this information in their initial disclosures, and they refused to do so. They must now cure their deficiency and adequately respond to RFP No. 10.

**D.    Despite There Being No Protective Order in the Case, Defendants Refuse to Produce Unredacted Records.**

Defendants' responses to Plaintiff's RFP Nos. 6, 7, and 8 are deficient because they point to redacted records.

In RFP No. 6, Plaintiff requests all records related to Plaintiff's arrest on the night of the Incident, including, without limitation, incident reports, supplements, and arrest reports. In RFP No. 7, Plaintiff requests all use of force reports related to the Incident. In response, Defendants directed Plaintiff to their Initial Disclosures, which included only *redacted* versions of their offense reports.

In RFP No. 8, Plaintiff requests relevant HPD policies, procedures, regulations, and directives from the date of the Incident to present. In response, Defendants directed Plaintiff to a list of publicly available HPD General Orders, most of which are unresponsive and some of which are redacted.

To be clear, there is no Protective Order that justifies the redaction of records in this case.[3] And if there were, redaction of sensitive information would only be appropriate for public disclosure, not before Plaintiff has had an opportunity to review the original records in the first place. As such, Defendants must cure their deficiencies to these RFPs with unredacted and fully responsive records.

**E.    Defendants' Argument That They Are Not Required to Produce Use of Force Reports in Response to RFP No. 7 Due to Their Qualified Immunity Defense is Frivolous.**

In a last-ditch effort to refrain from producing use of force reports related to the Incident, Defendants claim that they are not required to do so because they pleaded a qualified immunity defense. To be clear, this Court rejected the Defendants' qualified immunity defense at the motion to dismiss stage. Moreover: (1) use of force reports are central to this excessive force case; (2) the scope of discovery is broad, *see* Fed. R. Civ. P. 26(b)(1); and (3) no orders limiting the scope of discovery have been entered in this case.

**F.    Defendants Raise Boilerplate Objections Without Identifying Any Specific Problems With Plaintiff's Requests, As Is Their Burden.**

Defendants raise boilerplate objections—such as "vague and overbroad," "relevance" and "communications are protected from discovery under the rules"—without explaining the specific and particular ways in which Plaintiff's requests are deficient, and without making clear that records have or have not been withheld pursuant to these objections.

Plaintiff is prepared to explain how each of the requested records are relevant to the case and is willing to clarify any requests that are unclear. The fact remains, the bar for relevance is low.

Ultimately, Defendants' boilerplate objections serve no other purpose than to obstruct discovery and prevent Plaintiff from efficiently litigating this case. Plaintiff's Counsel appreciates the Court's prompt attention to this matter.

Best,

---

[3] Defendants sent Plaintiff a Motion for a Protective Order on December 17, 2025, and have still yet to file it, despite Plaintiff inquiring when it would be filed twice.